NIGHT BOX
FILED

AUG 19 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL CASE NO. **03-22225**

# CIV-MARTINEZ

MAGISTRATE JUDGE

DUBÉ

ROY AZIM,

Plaintiff,

vs.

THE UNITED STATES OF AMERICA,
and its agents,

Defendant.
_____/

**VERIFIED COMPLAINT FOR
DECLARATORY, INJUNCTIVE
AND MANDATORY RELIEF**

Plaintiff, Roy Azim, by and through his undersigned counsel, sues the United States of America, and its agents, and states as follows:

## INTRODUCTION

1.   This is an individual action for declaratory and injunctive relief in the nature of mandamus, authorized by the Declaratory Judgment Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 702.  This action challenges the policy of the United States of America, through its agents, of prohibiting, penalizing, impeding, or otherwise infringing on the right to travel of aliens residing in the United States with lawful permanent resident (LRR) status who are also subject to removal or deportation proceedings.

## JURISDICTION

2.   Jurisdiction is conferred with respect to a Complaint for Declaratory, Injunctive and Mandatory Relief by 28 USC § 1331, which grants original jurisdiction to the district courts for matters arising under the Constitution, laws and treaties of the United States including the Administrative Procedures Act, 5 USC § 552 *et seq*.  Jurisdiction is also conferred by 28 USC §



1361, which allows for mandamus actions to compel officers and employees of the United States to perform a duty owed to Plaintiff; 28 USC §§ 2201-2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, permitting declaratory and injunctive actions.

## VENUE

3.      Venue exists under 28 USC § 1391(e) in the United States District Court for the Southern District of Florida.  Plaintiff, Roy Azim, is a resident of the Southern District of Florida, and Defendant's agency operates in the Southern District of Florida.

## THE PARTIES

### Plaintiff

4.      Plaintiff, Roy Azim, (hereinafter "Plaintiff" or "Mr. Azim") is a lawful permanent resident (LPR) of the United States, who is currently in removal proceedings.

### Defendant

5.      The Defendant is the United States of America, operating through its various agents in the regulation of immigration, including the Executive Office of Immigration Review (EOIR), which is responsible for the Immigration Court and the Board of Immigration Appeals (BIA), the Bureau of Immigration and Customs Enforcement (BICE), which is the prosecuting agency of the Department of Homeland Security (DHS) for immigration matters, and the Bureau of Customs and Border Protection (BCBP), which is the agency within DHS responsible for immigration inspections and admissions at the border.

21.     Mr. Azim now seeks to travel abroad and to return to the United States without hindrance or penalty upon his return.

22.     The instant action for declaratory and injunctive relief is necessitated by the uncertainty which has been created by the Defendant and its agents in preventing lawful permanent residents in removal hearings from traveling abroad without losing any rights and without being incarcerated upon their return.   As a result, Mr. Azim seeks declaratory and injunctive relief from this Court to permit him to travel without penalty during the pendency of his appeal to visit his closest relative in the Kyrgyz Republic who is extremely ill.

## STATUTORY AND REGULATORY FRAMEWORK

23.     The federal regulations concerning the Board of Immigration Appeals provide for withdrawal of an appeal before the Board when an alien subject to deportation or removal proceedings departs the country prior to the rendering of a decision on appeal.   *See* 8 C.F.R. § 1003.4.  In the words of the pertinent regulation:

> Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken. Departure from the United States of a person who is the subject of deportation or removal proceedings, except for arriving aliens as defined in § 1001.1(q) of this chapter, subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

*Id.* (emphasis added).

24.     The federal regulations and statutory authority also provide that a lawful permanent resident, such as Mr. Azim, may be considered an "arriving alien" upon his return to the United

States, and therefore may be subject to removal if found inadmissible.  *See* 8 C.F.R. § 1001.1(q)

and INA § 101 (a)(13)(C), 8 U.S.C. § 1101 (a)(13)(C).   The pertinent regulatory section provides as

follows:

> The term arriving alien means an applicant for admission coming or attempting to
> come into the United States at a port-of-entry, or an alien seeking transit through the
> United States at a port-of-entry, or an alien interdicted in international or United
> States waters and brought into the United States by any means, whether or not to a
> designated port-of-entry, and regardless of the means of transport. An arriving alien
> remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an
> alien who was paroled before April 1, 1997, or an alien who was granted advance
> parole which the alien applied for and obtained in the United States prior to the
> alien's departure from and return to the United States, shall not be considered an
> arriving alien for purposes of section 235(b)(1)(A)(i) of the Act.

8 C.F.R. § 1001.1(q).

The pertinent statutory section defining when an LPR shall be regarded as seeking admission

into the United States provides as follows:

> (C)   An alien lawfully admitted for permanent residence in the United States shall
> not be regarded as seeking an admission into the United States for purposes of the
> immigration laws unless the alien-- . . .  (iv) has departed from the United States
> while under legal process seeking removal of the alien from the United States,
> including removal proceedings under this chapter and extradition proceedings, . . . .

INA § 101 (a)(13)(C)(iv), 8 U.S.C. § 1101 (a)(13)(C)(iv) (emphasis added).   It is apparent

from the above-quoted language that if Mr. Azim leaves the country and attempts to return,

he will fall within INA § 101 (a)(13)(C)(iv), and be viewed as seeking admission as an LPR

who "has departed from the United States while under legal process seeking removal of the

alien from the United States, including removal proceedings under this chapter . . . ." *Id.*

25.   With respect to Mr. Azim's bond in the amount of $150,000, the federal

regulations provide that an "arriving alien" who is found to be inadmissible shall be detained.

*See* 8 C.F.R. § 235.3(c).   Section 235 is entitled, "Inadmissible aliens and expedited

removal." Subsection 235.3(c), appearing therein, provides as follows:

> Arriving aliens placed in proceedings under section 240 of the Act.  Except as
> otherwise provided in this chapter, any arriving alien who appears to the inspecting
> officer to be inadmissible, and who is placed in removal proceedings pursuant to
> section 240 of the Act shall be detained in accordance with section 235(b) of the Act.
> Parole of such alien shall only be considered in accordance with § 212.5(a) of this
> chapter. This paragraph shall also apply to any alien who arrived before April 1,
> 1997, and who was placed in exclusion proceedings.

*Id.* (emphasis added).   INA § 235(b), in turn, provides in pertinent part as follows:

> If an immigration officer determines that an alien (other than an alien described in
> subparagraph (F)) [relating to natives or citizens of countries without diplomatic
> relations with the United States] who is arriving in the United States or is described in
> clause (iii) is inadmissible under section 1182(a)(6)(C) [relating to misrepresentations]
> or 1182(a)(7) [relating to documentation requirements] of this title, the officer shall
> order the alien removed from the United States without further hearing or review unless
> the alien indicates either an intention to apply for asylum under section 1158 of this title
> or a fear of persecution.

INA § 235(b)(1)(A)(i), 8 U.S.C. § 1225(b)(1)(A)(i).   From the above provisions, it is clear

that Mr. Azim, upon his return to the United States may not be entitled to bond, may be

detained, and may be found summarily removable without the opportunity for further hearing

or review. *Id.*

26.     The federal regulations further provide for breach of bond under the following

conditions:

> A bond is breached when there has been a substantial violation of the stipulated
> conditions. A final determination that a bond has been breached creates a claim in
> favor of the United States which may not be released or discharged by a Service
> officer. The district director having custody of the file containing the immigration
> bond executed on Form I-352 shall determine whether the bond shall be declared
> breached or cancelled, and shall notify the obligor on Form I-323 or Form I-391 of
> the decision, and, if declared breached, of the reasons therefor, and of the right to
> appeal in accordance with the provisions of this part.

8 C.F.R. § 103.6(e).   Since Mr. Azim would be considered an "arriving alien" upon his return and not subject to bond, as discussed above, it is likely that the Defendant and its agents may also consider Mr. Azim as having breached the terms of his bond by departing the United States.

27.     The federal regulations cited above are at odds with federal statutory authority which allows an alien the right to travel without penalty _unless and until_  his or her status as a lawful permanent resident is extinguished by judicial action. *See* INA § 101 (a)(27)(A), 8 U.S.C. § 1101 (a)(27)(A) (providing  for "special immigrant" status for LPRs returning from a temporary visit abroad); *See* INA § 101 (a)(13)(C), 8 U.S.C. § 1101 (a)(13)(C) (providing *inter alia* that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien. . .has been absent from the United States for a continuous period in excess of 180 days").

28.     The federal regulations are also at odds with federal Constitutional authority and case law which additionally allow an alien the right to travel without penalty _unless and until_ his or her status as a lawful permanent resident is extinguished judicially.   *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (an "innocent, casual, and brief" excursion by a resident alien outside the borders of the United States does not disrupt his resident alien status);  *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (right to travel abroad protected by due process clause of the Fifth Amendment);  *Worthy v. U.S.*, 328 F.2d 386 (5th Cir. 1964) (right to travel outside United States is right which is within protection of Constitution); *Matter of Luis-Rodriguez*, 22 I. & N. Dec. 747 (BIA 1999) (departure of an alien subject to deportation proceedings during the

pendency of the Service's appeal does not constitute a constructive withdrawal of the Service's appeal).

## COUNT I
## VIOLATION OF INA STATUTES

29.     Plaintiff incorporates by reference paragraphs 1 through 28 above, as if stated at length and in full herein.

30.     Defendant, through its agents, has erroneously interpreted and misapplied the federal regulations and statutes cited above to apply to an LPR in removal proceedings who has a favorable order by the IJ maintaining his LPR status, which is contrary to, inconsistent with, and violates the Immigration and Nationality Act, specifically, INA § 101 (a)(27)(A), 8 U.S.C. § 1101 (a)(27)(A), providing  for "special immigrant" status for LPRs returning from a temporary visit abroad.

31.     Plaintiff is entitled to injunctive relief to prevent Defendant, through its agents, from misapplying the above-cited regulations and statutes in such a way as to infringe upon LPRs' right to travel abroad in the manner stated.

## COUNT II
## VIOLATION OF THE UNITED STATES CONSTITUTION

32.     Plaintiff incorporates by reference paragraphs 1 through 28 above, as if stated at length and in full herein.

33.     Defendant, through its agents, has erroneously interpreted and misapplied the federal regulations and statutes cited above to apply to an LPR in removal proceedings who has a favorable order by the IJ maintaining his LPR status, in a way which infringes upon Plaintiff's right to travel abroad in violation of the Due Process Clause of the Fifth Amendment to the United States

- 10 -

Constitution.

34.     Plaintiff is entitled to injunctive relief to prevent Defendant, through its agents, from misapplying the above-cited regulations and statutes in such a way as to infringe upon LPRs' right to travel abroad in the manner stated.

## COUNT III
## ARBITRARY AND CAPRICIOUS AGENCY ACTION

35.     Plaintiff incorporates by reference paragraphs 1 through 28 above, as if stated at length and in full herein.

36.     Defendant, through its agents, has willfully and unreasonably interpreted the above-cited federal regulations as applying to Mr. Azim, an LPR who successfully defended against removal proceedings, where no final order of deportation has been entered, in such a way as to infringe upon his right to travel abroad, by making the departure from the United States and the eventual return a matter of uncertainty.

37.     Since there has already issued from the Immigration Court a ruling finding that Mr. Azim is entitled to a waiver for certain misrepresentations, pursuant to INA § 237 (a)(1)(H), 8 U.S.C. 1227(a)(1)(H), he should not be prohibited, penalized, hindered, or have his right to travel otherwise infringed.  Plaintiff is concerned that if he travels to visit his ill relative he will be denied re-entry, placed in detention, denied his right to appeal, and/or subject to summary removal.

38.     Such interpretation and misapplication of the regulations is arbitrary and capricious conduct in violation of the Immigration and Nationality Act, INA § 101 (a)(27)(A), 8 U.S.C. § 1101 (a)(27)(A), providing  for "special immigrant" status for LPRs returning from a temporary visit abroad, and the Administrative Procedure Act, 5 U.S.C. § 702.

39.     Plaintiff is entitled to injunctive relief to prevent Defendant, through its agents, from misapplying the above-cited regulations and statutes in such a way as to infringe upon LPRs' right to travel abroad in the manner stated.

**WHEREFORE,** Plaintiff prays that this Honorable Court:

(1)     Assume jurisdiction of this Cause.

(2)     Enter an order that this cause be maintained as an individual action.

(3)     DECLARE that Defendant's agents' construal of 8 C.F.R. § 1003.4, 8 C.F.R. § 1001.1(q), INA § 101 (a)(13)(C), 8 C.F.R. § 235.3(c), and 8 C.F.R. § 103.6(e), as applied to an LPR in removal proceedings who has a favorable order maintaining his LPR status by the IJ, is unconstitutional, violative of federal statutory and judicial authority, and a prohibited infringement on the LPR's right to travel abroad.

(4)     DECLARE that, in the instant case, since there has already issued from the Immigration Court a ruling that Mr. Azim is entitled to a waiver for certain misrepresentations, pursuant to INA § 237 (a)(1)(H), 8 U.S.C. 1227(a)(1)(H), and no order of deportation concerning the Plaintiff has been issued, Mr. Azim is free to travel abroad and return to the United States and that such travel should not in any way be prohibited, penalized, hindered, or otherwise infringed.

(5)     COMPEL Defendants and those acting under them to perform their duty to interpret the federal regulations in a reasonable and constitutional manner such that an LPR's right to travel is not in any way infringed.

(6)         ENJOIN Defendant through its agents from construing any departure from the United

States by Mr. Azim as a withdrawal of his appeal before the BIA or placing him in an arriving alien

status subject to summary removal.

(7)         GRANT Plaintiff reasonable attorney's fees, expenses, and costs under the Equal

Access to Jusitce Act, 28 U.S.C. § 2412.

(8)         GRANT any other and further relief as this Court deems proper under the

circumstances.


Dated: August ( 9, 2003                    Respectfully submitted,

                                           KURZBAN KURZBAN WEINGER, & TETZELI, P.A.
                                           2650 SW 27th Avenue, 2nd Floor
                                           Miami, Florida 33133
                                           Telephone: (305) 444-0060
                                           Facsimile (305) 444-3503
                                           Email: ira@kkwtlaw.com


                                           By: _____
                                               IRA J. KURZBAN, ESQ.,
                                               Florida Bar No.: 225517
                                               Counsel for Plaintiff

## VERIFICATION

I, ROY AZIM, hereby verify that to the best of my knowledge and belief all matters

contained in the above **Verified Complaint for Declaratory, Injunctive and Mandatory**

**Relief** are true and correct.

By: _____

STATE OF FLORIDA  )
                  )ss
COUNTY OF DADE    )

The foregoing instrument was acknowledged before me this 18TH day of August 2003 by
ROY AZIM, who is personally known to me ~~or has presented~~ _____ as a
~~photographic identification~~, and who ~~did~~/did not take an oath.

_____
NOTARY PUBLIC

YOLANDA RODRIGUEZ DE LAS PENAS
Typed/Printed Name
NOTARY PUBLIC,
STATE OF FLORIDA AT LARGE

My Commission Expires:

YOLANDA RODRIGUEZ DE LAS PENAS
MY COMMISSION # DD 017163
EXPIRES: April 29, 2005
Bonded Thru Budget Notary Services

- 14 -

FROM :                          FAX NO.  :

Jan. 16 2001 02:17PM P1

IMMIGRATION AND NATURALIZATION SERVICE
18201 SW 12th Street
Miami, Florida 33194

# BOND                                                          BOND

TO                                              Date: October 25, 2001
Roy Azim  Aka: Orazkhum Faizievick Saidozimov     46 308 957
445 Grand Bay Dr. PH 2B                          KRO-S-739
Key Biscayne, Florida 33149                      150,000.00

You have been released from service custody pending a final decision in your exclusion/deportation/removal hearing.  It is understood that you will be residing at the above address.  The law requires you notify the Immigration Judge (at the address shown above) of any address correction or address change.  When doing so, be sure to include your name and the File Number shown above in your written communication.

Office of the Immigration Judge
18201 SW 12th Street
Miami, Florida 33194

If you have already appeared before the Immigration Judge, you have been told when to appear for a further hearing.  If you have yet to appear before the Judge, a notice of hearing will soon be sent to you at the above address.  If you have filled out and signed a Motion for Change of Venue, your case may be transferred to the nearest Execution Office of Immigration Review where you reside.  If you do not appear for the hearing, three (3) actions can be taken in your case.

1.  Your deportation hearing may be held in your absence.
2.  If a bond has been paid, it may be breached.
3.  A warrant for your arrest may be issued.

I certify that the address listed above, furnished by me to the Service, is correct, and that a copy of this notice has been received by me this date.

2001                                                                    October 25,
                                    Signature of Respondent              Date

By Personal Service on respondent                      Date
                        Signature of INS Employee
                        Job Title

*Alien Copy*                                    Right Index              Photo

**EXHIBIT**
**A**

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## MIAMI, FLORIDA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| Roy AZIM | ) | IN REMOVAL PROCEEDINGS |
| A 46-308-957 | ) | |
| | ) | |
| RESPONDENT | ) | |
| | ) | |

**CHARGES:**       Section 237(a)(1)(A) of the Immigration and Nationality Act (Act) as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has procured a visa, other documentation, or entry into the United States, or other benefit provided under the Act, by fraud or by willfully misrepresenting a material fact, under section 212(a)(6)(C)(i) of the Act.

Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Act, under section 212(a)(7)(A)(i)(I) of the Act.

Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of a crime involving moral turpitude (other than a purely political offence), under section 212(a)(2)(A)(i)(I) of the Act.

Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substance Act [21 U.S.C. 802]), under section 212(a)(2)(A)(i)(II) of the Act.

Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of two or more offences (other than purely political offences) for which the aggregate sentences to



EXHIBIT
B

confinement actually imposed were five years or more, under section 212(a)(2)(B) of the Act.

**APPLICATIONS:**   Section 237(a)(1)(H) of the Act: Waiver Authorized for Certain Misrepresentations

**On Behalf of the Respondent:**
Ira Kurzban, Esq.
Kurzban, Kurzban, Weinger & Tetzeli, P.A.
2650 S.W. 27th Avenue, 2nd Floor
Miami, FL 33133

**On Behalf of the Service:**
Diana I. Alvarez
Assistant District Counsel
Immigration and Naturalization Service
155 South Miami Ave.
Miami, FL 33130

## WRITTEN DECISION OF THE IMMIGRATION JUDGE

### I. Procedural History

The Respondent is forty-six year old, native and citizen of Kyrgyz Republic. He was admitted to the United States as a legal permanent resident on or about June 6, 1997, in New York, New York. On October 16, 2001, the Immigration and Naturalization Service (Service) issued a Notice to Appear (NTA), charging the Respondent with removability pursuant to section 237(a)(1)(A) of the Act, as an alien who was inadmissible at the time of entry under section 212(a)(6)(C)(i), as having procured a visa by fraud or willfully misrepresenting a material fact. See Exhibit 1. The Service issued Additional Charges of Inadmissibility/Deportability on three separate occasions: October 22, 2001; October 23, 2001; and April 7, 2001. In these documents the Service charges that the Respondent is also removable pursuant to section 237(a)(1)(A) of the Act, as an alien who was inadmissible at the time of entry under the following sections of the Act: 212(a)(7)(A)(i)(I) as an alien immigrant not in possession of a valid immigrant visa; 212(a)(2)(A)(i)(I) as an alien who has been convicted of a crime involving moral turpitude; 212(a)(2)(A)(i)(II) as an alien who has been convicted of a law or regulation of a foreign country relating to a controlled substance; and 212(a)(2)(B) as an alien who has been convicted of two or more offences for which the aggregate sentences to confinement actually imposed were five years or more. See Exhibits 2, 3, and 4.

The Service based the criminal charges of removability on the Respondent's 1981 arrest, conviction, and sentence for seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit. See Exhibit 6. The charge of removability based on the Respondent's procuring a visa by fraud or willful misrepresentation stems from his 1997 application for a U.S. immigrant visa, wherein the Respondent failed to disclose that he had ever been arrested, convicted, or served a jail sentence. See Exhibit 5.

On two occasions the Respondent attempted to have his convictions vacated. In 1991, prior to his application for an immigrant visa, a trade-union committee vacated the Respondent's convictions early. See Exhibit 7. The trade-union made the following finding:

> It has been 3 years and 8 months since his release. The trade-union committee believes that it has been quite sufficient for [Respondent], through demonstration of his exemplary behavior and diligent work, to prove his complete rehabilitation after having served his sentence. Therefore, the committee petitions to vacate his conviction early. See Exhibit 7.

In 1998, a year after the Respondent applied for his immigrant visa, the Supreme Court of the Kyrgyz Republic vacated the Respondent's convictions by acquitting him and overturning his sentence. The Supreme Court made the following finding:

> Under such circumstances, the conclusions of the Criminal Affairs Division on [the Respondent's] guilt in committing fraud and causing significant damage to the victim; illegally obtaining, possessing, and using drugs; illegal possession of a weapon; violating the laws on currency transactions; and causing serious bodily harm are unfounded and he must be acquitted according to [citations omitted] the Criminal Code due to absolute lack of evidence that he committed such crimes; and according to [citations omitted] of the Criminal Code due to fact that his actions did not constitute crimes.

> After evaluating the above and finding that the guilty verdict against [the Respondent] is unfounded according to the aforementioned Articles, the Plenum of the Supreme Court of the Kyrgyz Republic rules that the sentence of the Criminal Affairs Division must be overturned; [the Respondent] must be fully acquitted; the complaint admitted; and the case closed.

On May 14, 2002, the Respondent appeared before this court with counsel, acknowledged receipt of the NTA, admitted allegations one through three, denied allegations four through six, and contested all charges of removability. At a status conference held on Febrary 3, 2003, Respondent's counsel instructed the Court that they would be seeking relief in the form of a waiver for certain misrepresentations, pursuant to section 237(a)(1)(H) of the Act. Thereafter, the Court conducted individual merits hearings on April 23, 2003 and April 28, 2003, to determine whether the Respondent was removable as charged and/or entitled to the relief requested.

## II. Evidence

### A. Documentary Evidence

Exhibit 1 - Notice to Appear (NTA) dated October 16, 2001 & filed with the Court on November 15, 2001

Exhibit 2 - Additional Charges of Inadmissibility/Deportability dated October 22, 2001 & filed

with the Court on October 23, 2001

**Exhibit 3** - Additional Charges of Inadmissibility/Deportability dated October 23, 2001 & filed with the Court on November 15, 2001

**Exhibit 4** - Additional Charges of Inadmissibility/Deportability dated April 7, 2003 & filed with the Court on April 8, 2003

**Exhibit 5** - Application for Immigrant Visa with Translation

**Exhibit 6** - Certified Conviction Documents from the Supreme Court of the Kyrgyz Republic with Translation

**Exhibit 7** - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of the 1991 Order Vacating Conviction with Translation

**Exhibit 8** - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of the 1998 Order Vacating Conviction with Translation

**Exhibit 9** - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of Police Certificate with Translation

**Exhibit 10** - Curriculum Vitae of Proposed Witnesses: (1) Professor Peter Solomon; (2) Professor of Russian Law; (3) Respondent's Russian Counsel; (4) SNB Representative; (5) Dan Retter; (6) Svetlana Vassiliouk

**Exhibit 11** - Order for Dismissal of Indictment, *United States v. Roy Azim*, Case No. 01-1072-CR-MORENO (S.D.Fla. 2002)

**Exhibit 12** - Declaration Under Penalty of Perjury of Litvinenko Galina Emelianovma

**Exhibit 13** - Expert Affidavit with Attachments of Peter Solomon

**Exhibit 14** - Declaration Under Penalty of Perjury of Sabyr Seidinovich Omorbekov

**Exhibit 15** - Expert Declaration Under Penalty of Perjury of Karmanov Karpek Shamsedinovich

**Exhibit 16** - Affidavit of Daniel Retter, Esq.

**Exhibit 17** - U.S. Department of State, Country Reports on Human Rights Practices - Kyrgyz Republic - 2001

**Exhibit 18** - Human Rights Watch World Report 2003 - Kyrgyzstan

**Exhibit 19** - Amnesty International Report 2002 - Kyrgyzstan

**Exhibit 20** - Respondent's Marriage Certificate to Romy A. Marqvardt & Copy of Respondent's Passport

**Exhibit 21** - Evidence of United States Citizenship and/or Lawful Permanent Residence & Birth Certificates of Respondent's Children

**Exhibit 22** - Affidavit of Mr. Sheldon Lowe

**Exhibit 23** - Affidavit of Fred M. Santo, Esq., partner at Katten, Muchin, Zavis & Rosenman

**Exhibit 24** - Affidavit of Jeffrey Yager, CPA

**Exhibit 25** - Agreement of Trust Creating a Charitable Trust, "The Roy Azim Charitable Foundation" and Internal Revenue Service Designation as a Tax-Exempt Charitable Organization under IRC §§ 501(a) & 501(c)(3)

**Exhibit 26** - Letter from David M. Darst, Managing Director, Morgan Stanley Dean Witter

**Exhibit 27** - Declaration under Penalty of Perjury of Israilova Vera Usurkanova, Director of Belovodsk Psycho-Neurological Children Boarding School, Kyrgyzstan

**Exhibit 28** - Affidavit of Dr. Jack Kachkar, founder and Chief Executive Officer, Miza Pharmaceuticals USA, Inc., & Evidence of Funding from the United States Department of Agriculture through its Rural Business-Cooperative Service Guarantee Loan Program

**Exhibit 29** - Psychological Evaluation of Respondent and His Family Performed by Dorita R.

Marina, Ph.D., ABPP

**Exhibit 30** - Letter by Michael Dittoe Assistant United States Attorney for the Southern District of Florida

**Exhibit 31** - Divorce Decree from the Supreme Court, Appellate Division, Second Department, New York, for Respondent and Joulia Saidazimova

### B. Testimonial Evidence

The Respondent was the only individual who testified at the removal proceedings. The Respondent was born in the Kyrgyz Republic and is currently a citizen thereof. He was admitted to the United States in 1997 as a lawful permanent resident and has lived in the United States since this admission. The Respondent's first wife[1] and three oldest children were also granted legal permanent residency status based on the Respondent's application. The Respondent was not aware that his petition for legal permanent residence, completed by his immigration attorney, incorrectly stated that he was born in Kazakhstan. The Respondent testified that he has returned to the Kyrgyz Republic several times since immigrating to the United States, his last departure taking place in 2001. The Respondent's parents, sister, and brother still reside in the Kyrgyz Republic.

The Respondent's immediate family resides in the United States. The Respondent's two oldest children, Rustan Saidazimov, twenty-five years old, and Dillorome Saidazimov, fourteen years old are both legal permanent residents in the United States. They have lived with their mother, the Respondent's ex-wife, Julia Mikhailovna Saidazimova, in New York. However, Rustan recently moved to Miami to live with his father. The Respondent's younger two children, Aziza Saidazimov, twelve years old, and Saida Azim, four years old, have a different mother, Zuhra Nurmotova. Aziza is a legal permanent resident of the United States and has consistently lived with the Respondent, except for last year when she spent time in the Kyrgyz Republic studying the Russian language. The Respondent's youngest child, Saida, was born in the United States but has lived in the Kyrgyz Republic with her mother until a month ago.

The Respondent testified that his "relationship to [his] children is very close." Like most parents he spends time with his children, vacations with them, and supports them financially. When asked what he would like for his children the Respondent stated, "Like every father or parent, I would like for them to grow up and study and get educated in a civilized country like the United States and of course develop a good future." Although some of the Respondent's children have traveled to the Kyrgyz Republic, the Respondent testified that his children feel that the United States is there home. He believed it would be especially hard for his daughters to return to the Kyrgyz Republic. "It would be a complete catastrophe for them because it is a fundamentalist religious country. They grew up in a completely different society. They speak differently. They dress differently. . . This is a Muslim country and women are treated completely differently." Additionally, his children's return to the Kyrgyz Republic would be

---

[1] The Respondent testified that he attended divorce proceedings in the Kyrgyz Republic; however, the Respondent testified that according to the laws of the Kyrgyz Republic the divorce was not final until he received the judicial decree in New York.

difficult because none of his children speak the language of the Kyrgyz Republic. And although some of his children speak Russian, the Respondent testified that the language of the Kyrgyz Republic "is a completely different language than Russian, the difference you would find between English and Japanese."

In addition to his children, the Respondent's current wife lives in the United States. The Respondent testified that he is married to Romy A. Marqvardt, a United States Citizen. Although the Respondent was confused as to the exact date of their marriage, he later testified that they were married on February 14, 2002. The Respondent testified that he and his wife lived together for a short time before they separated due to problems stemming from his immigration difficulties. However, the Respondent believes that if this matter is resolved positively they will be able to continue their life together.

In addition to his family ties in the United States, the Respondent has significant business ties as well. The Respondent and his son are the owners of International Consulting LLC, a Florida registered financing and management consulting company. International Consulting LLC invests in domestic enterprises, such as pharmaceutical companies. For example, the Respondent's company invested in Miza Pharmaceuticals USA, Inc. Miza focuses on eye care products and is funded by the U.S. Department of Agriculture through its Rural Business-Cooperative Service Guaranteed Loan Program. The Respondent testified that he no longer has any business dealings in the Kyrgyz Republic.

The Respondent's financial ties to the United States are not limited to his business. The Respondent started a foundation in the United States in 1999. The foundation is formally known as the Roy Azim Charitable Foundation; however, the Respondent testified that he often refers to it by his mother's name. The foundation has donated funds to the Red Cross and organizations that help children in need. In addition to the foundation, the Respondent has made other charitable donations while living in the United States. For example, unable to donate blood,[2] the Respondent donated $5,000 to the New York Police Department and $5,000 to the New York Fire Department after the September 11 terrorist attacks.

## III. Credibility

Indications of credible testimony are consistency on direct and cross examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly tells his story. Matter of B-, 21 I&N Dec. 66 (BIA 1995). Adverse credibility determinations are appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony. Matter of S-M-J, 21 I&N Dec. 722 (BIA 1997).

In the present matter, the Court has carefully reviewed the documentary evidence presented and listened to the Respondent's testimony while observing his demeanor. The Court recognizes that the nature of the Respondent's testimony was limited in nature, focusing on personal matters such as his family and his business; however, the Court finds the Respondent to

---

[2] The Respondent has been diagnosed with Hepatitis B.

be credible. No inconsistent testimony was elicited during cross examination, and any discrepancies that arose during testimony were fully explained by the Respondent.[3] Additionally, the Respondent's testimony was consistent with the supporting documentary evidence submitted to this court and no contradictory evidence was submitted by the Service.

**IV. The Respondent procured his entry into the United States by willfully misrepresenting a material fact and is removable pursuant to section 212(a)(6)(C)(i) of the Act.**

### 1. Willful Misrepresentation

The requirement that a misrepresentation is willful is satisfied by a finding that the misrepresentation was deliberate and voluntary. Espinoza-Espinoza v. INS, 554 F.2d 921, 925 (9th Cir. 1977); Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir. 1985); Witter v. INS, 113 F.3d 549, 554 (5th Cir. 1997); Mwongera v. INS, 187 F.3d 323, 330 (3rd Cir. 1999). Proof of an intent to deceive is not required. Id. Rather knowledge of the falsity of a representation is sufficient. Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995) (citing Espinoza-Espinoza v. INS, 554 F.2d 921, 925 (9th Cir. 1977) (citing Matter of Hui, 15 I&N Dec. 288 (BIA 1975))).

It is clear from the record that the Respondent was arrested. See Exhibit 6. The Respondent's criminal attorney, Litvinenko Galina Emelianovna, acknowledges the Respondent was convicted and sentenced to eight years of imprisonment by the Trial Board of the Supreme Court of the Kyrgyz Republic in 1981. See Exhibit 12. The Respond contends that any misrepresentation was not willful because he was under the belief, with the advice of counsel, that the law of the Kyrgyz Republic vacated his arrest and conviction in 1991 and therefore he was required to provide a negative answer. In essence, the Respondent's argument is that he believed his answer was "correct." However, the question on the visa application asks whether the Respondent had ever been *arrested, convicted, or served a jail sentence*. Although the Respondent may have believed he was no longer convicted of a crime, he was well aware that he had been "arrested" and had "served a jail sentence." See Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995) (quoting the Board of Immigration Appeals, "The question on the visa application is not circumscribed or limited nor does it legitimately permit interpretations of the term "arrest."). The Court also refuses the Respondent's argument that he relied on his attorney's advice. Id. Therefore, the Court finds the Respondent's misrepresentation on his Application for Immigrant Visa was willful.

### 2. Material Fact

The requirement that a misrepresentation is material is satisfied if the misrepresentation has a natural tendency to influence the decision of the Service. Kungys v. United States, 485 U.S. 759, 772 (1988). The Attorney General held in Matter of S- and B-C-, that a misrepresentation made in connection with an application for a visa or other documents is material if either (1) the

---

[3] For example, while testifying, the Respondent referred to his charitable foundation by a different name than listed on the Agreement of Trust. The Respondent clarified on redirect examination that "there is no difference between Poolat (phonetic spelling) and The Roy Azim Foundation. It is one and the same."

alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might will have resulted in a proper determination that he be excluded. Matter of Belmares-Carrillo, 13 I&N Dec. 195 (BIA 1969) (citing Matter of S- and B-C-, 9 I&N Dec. 436 (BIA 1960)).  In the case at hand, the Respondent denied having been arrested, convicted, and serving a sentence of seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit.  The Respondent would have been inadmissible based on these facts and therefore the misrepresentation was material.

The Respondent's material misrepresentation is not nullified by the fact that his conviction was vacated *ab initio* a year after he filed his Application for an Immigrant Visa. Developments or happenings occurring afterwards cannot vitiate the fraud committed at the time the document was obtained. Matter of G-R-, 7 I&N Dec. 508 (BIA 1957) (citing United States ex rel. Jankowski v. Shaughnessy, 186 F.2d 580 (2nd Cir. 1951); Landon v. Clarke, 239 F.2d 631 (1st Cir. 1956)).  The vacation of the Respondent's conviction *ab initio* does not retroactively render ineffective the misrepresentation the Respondent committed when he denied being arrested, convicted, and sentenced.

The Court finds the Respondent procured his visa by a willful misrepresentation of a material fact and therefore the Service has proven by "clear, unequivocal, and convincing evidence," that the Respondent is removable. Woodby v. United States, 385 U.S. 276, 286 (1966).

## IV.  Waiver for Certain Misrepresentations

This Court has found the Respondent is removable pursuant to Section 212(a)(6)(C)(i) of the Act, as an alien who has procured a visa, other documentation, or entry into the United States, or other benefit provided under the Act, by fraud or by willfully misrepresenting a material fact; however, section 237(a)(1)(H) of the Act provides a waiver for this ground of inadmissibility.[4] In order to demonstrate eligibility for relief under Section 237(a)(1)(H) of the Act, the Respondent must establish that he is statutorily eligible and that he merits relief in the exercise of discretion.

---

[4] The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 212(a)(6)(C)(i), whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)) who –

(i) (I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission...

A waiver of deportation for fraud or misrepresentation granted under this subparagraph shall also operated to waive deportation based on the grounds of inadmissibility directly resulting from such fraud or misrepresentation.

To be eligible for a waiver under Section 237(a)(1)(H)(i) of the Act, the Respondent must show two things: (1) that he is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence and (2) that he is "otherwise admissible" to the United States at the time of such admission. The Respondent has both a  United States Citizen child and a United States Citizen wife that qualify him for a this waiver.[5] See Exhibits 20 and 21.

In addition to possessing a qualifying relative, the Respondent must also show that he was "otherwise admissible" at the time of his admission to the United States.  The meaning of "otherwise admissible" and what grounds of inadmissibility this form of relief actually waives has been unclear in the past. Compare INS v. Errico, 385 U.S. 214 (1966); with Reid v. INS, 420 U.S. 619 (1975).  However, the Supreme Court has made it clear that to be "otherwise admissible" the Respondent must not be inadmissible on some ground other than the entry fraud. INS v. Yueh-Shaio Yang, 519 U.S. 26, 30 (1996).

In 1981, the Respondent was arrested, convicted, and sentenced to seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit.  See Exhibit 6.  However, the Supreme Court of the Kyrgyz Republic found there was a complete lack of evidence and acquitted the Respondent of all criminal wrongdoing.  See Exhibit 8.  Based on these findings the Respondent's convictions were vacated *ab initio*.

Section 101(a)(48)(A) of the Act defines the term "conviction" as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication has been withheld where–
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

The Board of Immigration Appeals has recently addressed the issue of vacated convictions on multiple occasions.  In a recent decision the Board found that,

> there is a difference between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships. Thus, if a court with jurisdiction vacates a

---

[5] The Respondent acquired his permanent resident status through misrepresentation and therefore has never been lawfully admitted for permanent residence. Matter of Koloamatangi, 23 I&N Dec. 548 (BIA 2003).  Thus, the Respondent's children cannot obtain derivative lawful permanent resident status from the Respondent and these children cannot qualify the Respondent for a waiver under Section 237(a)(1)(H).

conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a "conviction" within the meaning of section 101(a)(48)(A). If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains "convicted" for immigration purposes. The fact that the case at bar involves a foreign conviction does not alter our analysis with respect to the purpose of the subsequent vacation of the conviction. Matter of Pickering, 23 I&N Dec. 621 (BIA 2003); see also Matter of Roldan, 22 I&N Dec. 512 (BIA 1999); Matter of Rodriguez-Ruiz, 22 I&N Dec. 1378 (BIA 2000).

In the matter before this Court, the Respondent's convictions were vacated on two separate occasions. Although the first attempt to vacate the Respondent's convictions was based on a rehabilitative statute, the second vacation was based on a substantive defect in the underlying criminal proceedings. In 1991, a trade-union committee vacated the Respondent's convictions based on their finding that the Respondent had demonstrated, through exemplary behavior and diligent work, his complete rehabilitation. See Exhibit7. However, in 1998, the Supreme Court of the Kyrgyz Republic vacated the Respondent's convictions based on their finding that the Respondent's convictions were unfounded and acquitted the Respondent due to an absolute lack of evidence that the Respondent had ever committed such crimes. See Exhibit 8. The Supreme Court of the Kyrgyz Republic looked to the evidentiary basis of the Respondent's conviction, found it to be nonexistent and acquitted the Respondent; this vacation of the Respondent's convictions was undoubtedly based on the merits of the underlying conviction. Based on these findings by the Supreme Court of Kyrgyz Republic, the Respondent's convictions are eliminated for immigration purposes and thus cannot be the basis of any grounds of inadmissibility.

Section 237(a)(1)(H) of the Act requires that the Respondent was "otherwise admissible" to the United States at the time of such admission. The Respondent's convictions were vacated *ab initio* in 1998, a year after the Respondent's admission to the United States. Under Dameron v. United States, the vacation of the charges *ab initio* should be given retroactive effect and relate back to the date of the Respondent's original conviction in 1991. Dameron v. United States, 488 F.2d 724 (5th Cir. 1974).[6] In that case, an individual was convicted of a felony in 1951. Based on this earlier felony conviction, he was convicted in 1971, under a statute that prohibited individuals convicted of a crime punishable for a term exceeding one year, to transport a firearm. Id. Subsequent to his second conviction, the individual obtained an order vacating his first felony conviction *ab initio*. Id. The Court held that the order vacating his first conviction *ab initio* related back to the date of his original conviction and therefore, altered the individual's status at the time of his second conviction. Id.

---

[6] This case is binding on the Eleventh Circuit under the finding in Bonner v. City of Prichard, that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent on all federal courts within the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

Similarly, in the matter before this Court, the Respondent was convicted in 1981 and based on these convictions would have been inadmissible in 1997 at the time of his entry to the United States. However, subsequent to his entry, the Respondent obtained an order vacating his 1981 convictions *ab initio*. This order vacating the Respondent's convictions *ab initio* relates back to the date of his convictions, 1981, and alters the Respondent's admissibility status at the time of his entry in 1997. Therefore, the Respondent was "otherwise admissible" in 1997.

## B. Discretion

> The question whether to exercise discretion favorably necessitates a balancing of an alien's undesirability as a permanent resident with the social and humane considerations present to determine whether a grant of relief is in the best interests of this country. Adverse factors may include the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other additional evidence of the alien's bad character or undesirability as a lawful permanent resident of the United States. Favorable considerations may include family ties in the United States; residence of a long duration in this country, particularly where it commenced when the alien was young; evidence of hardship to the alien or his family if deportation occurs; a stable employment history; the existence of property or business ties; evidence of value and service to the community; and other evidence of the alien's good character. Matter of Tijam, 22 I&N Dec. 408 (BIA 1998) (citing Hernandez-Robledo v. INS, 777 F.2d 536 (9th Cir. 1985); Matter of Mendez-Moralez, 21 I&N Dec. 296 (BIA 1996)).

In the matter before this Court, the Respondent has presented significant equities, and the Service has failed to present any serious adverse factors. The Respondent has lived in the United States for six years and has substantial family ties in the United States. The Respondent's immediate family, including his four children, live in the United States. The Respondent has provided financially for his children. If the Respondent were removed to the Kyrgyz Republic, the hardship to his family would be great. His children have spent much of their formative years in the United States and consider this their home. Their difficulty adjusting to life in the Kyrgyz Republic would be magnified by their inability to speak the language. This adjustment would be most severe for the Respondent's daughters, who would face a future in a country that the Respondent has testified condones the disparate treatment of women. Therefore, the Respondent's removal will have a substantial effect on his four children.

In addition to family ties, the Respondent has significant business ties in the United States. The Respondent is the owner of a successful corporation that invests in many domestic enterprises. Returning to the Kyrgyz Republic would be a substantial economic hardship on the Respondent and his family as he no longer has any business dealings there. In addition to running a successful business, the Respondent is of value and service to the community. The Respondent has created a foundation that provides substantial assistance to children in need.

Moreover, many of the adverse factors to be considered when making such a discretionary determination are not evident from the record. Of particular interest to the Court is the Respondent's previous convictions in the Kyrgyz Republic. These convictions have been vacated on the merits and therefore are not convictions for immigration purposes. Matter of Rodriguez-Ruiz, 22 I&N Dec. 1378 (BIA 2000). However, not only was the Court prohibited from considering these convictions to determine removability, the Court was unable to consider the nature, seriousness, and underlying circumstances of these convictions based on the Service's inability to question the Respondent on this matter. This is based on an agreement between the United States Attorney for the Southern District of Florida and the Respondent. This agreement states, "no information disclosed by your client during the debriefing or his testimony will be offered in evidence against your client in any criminal or civil proceeding, nor may the government make any derivative use of the statements." See Exhibit 31.

In accordance with INS v. Yueh-Shaio Yang, the Court may also look to the initial fraud or misrepresentation for which the Respondent is being removed. INS v. Yueh-Shaio Yang, 519 U.S. 26 (1996). However, the Respondent explained that his failure to disclose that he had been arrested, convicted, and sentenced was based on the 1991 vacation order and the advice of counsel. Although this does not vitiate the misrepresentation itself, it does not demonstrate that the Respondent was attempting to circumvent our immigration laws.

Although the Service did not present any serious adverse factors that would weigh against a grant of discretionary relief, the Service did provide evidence that diminished the Respondent's equities. For example, the Respondent and his current wife have been married a very short time. The Service also contends the hardship to the Respondent's children if they are forced to return to Kyrgyz Republic will be lessened because of their ability to speak Russian. Moreover, the Respondent's extended family still reside in the Kyrgyz Republic. However, this evidence does not outweigh the factors favorable to the Respondent.

Considering all of the equities in the Respondent's favor and balancing those against the adverse evidence presented by the Service, the Court finds the Respondent has shown that he merits a favorable exercise of discretion.

## ORDERS OF THE IMMIGRATION JUDGE

**IT IS HEREBY ORDERED** that the Respondent's request for a waiver for certain misrepresentation under Section 237(a)(1)(H) of the Act is **GRANTED**.

Dated this 27 day of June, 2003.

Honorable Pedro A. Miranda
United States Immigration Judge

DATE SERVED 7/9/03
(TA)
(R/PR)
APPEAL DUE

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB # 1105-0065
**Notice of Appeal to the Board of Immigration**
**Appeals of Decision of Immigration Judge**

| | | |
|---|---|---|
| 1. | List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):<br><br>Azim, Roy<br>A46 308 957<br><br>**!   WARNING TO ALL APPLICANT(S)/RESPONDENT(S):  Names and "A"<br>Numbers of everyone appealing the order must be written in Item #1.** | For Official Use Only |

2.   Applicant/Respondent is currently   ☐ DETAINED   ☒ NOT DETAINED.

3.   Appeal from the Immigration Judge's decision dated 07/09/03.





> **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely, separate written brief or statement filed with the Board.

4.

## This is an appeal by the Immigration and Naturalization Service.

The immigration judge erred as a matter of fact and law in failing to sustain the charges of removability pursuant to § 237(a)(1)(A) of the Immigration and Nationality Act ("INA" or "Act"), as an alien who, at the time of entry, was inadmissible pursuant to INA § 212(a)(2)(A)(i)(I) (regarding crimes involving moral turpitude), § 212(a)(2)(A)(i)(II) (regarding controlled substance law violation), and § 212(a)(2)(B) (regarding multiple criminal convictions). The immigration judge erred in finding that respondent was statutorily eligible for a waiver of removability pursuant to § 237 (a)(1)(H) of the Act, and in granting the waiver as a matter of discretion.

In 1981, the respondent was convicted in the Kyrgyz Republic for crimes involving infliction of serious physical harm (resulting in loss of sight to victim), narcotics violations, firearms violations, currency violations and theft by deceit (fraud). He was sentenced to a total of eight (8) years imprisonment in a high security prison, compulsory treatment for drug addiction, and confiscation of property. Respondent served over seven (7) years of that sentence. In 1991, his convictions were expunged pursuant to a purely rehabilitative statute.

Respondent applied for a U.S. immigrant visa in 1997, wherein he failed to disclose the referenced convictions. Respondent was admitted thereafter to the U.S. in June of 1997. In 1998, after his entry into the U.S., the convictions were vacated on the merits.

The immigration judge found that respondent was subject to removal pursuant to § 237(a)(1)(A) of the Act as an alien who, at the time of admission, was inadmissible into the U.S. pursuant to § 212(a)(6)(C)(i) of the Act as an alien who procured an immigrant visa by fraud or by a willful misrepresentation of a material fact (i.e., his criminal history).

However, he erroneously failed to sustain the additional charges described above based on the same underlying criminal convictions. The immigration judge then erroneously granted respondent a waiver of removability pursuant to § 237 (a)(1)(H) of the Act. Respondent is statutorily ineligible for a

§ 237(a)(1)(H) waiver because, in order to be eligible for this waiver, respondent must have been "otherwise admissible" to the United States *at the time of admission*; that is, he could not be inadmissible on grounds other than the entry fraud. INS v. Yueh-Shaio Yang, 519 U.S. 26, 29-30 (1996); rehearing denied, 519 U.S. 1085 (1997); Reid v. INS, 420 U.S 619 (1975) (holding that § 241(f), the pre-cursor to § 241(a)(1)(H) and § 237 (a)(1)(H), did not waive charge of entry without inspection); Ying Suet Chow v. INS, 641 F.2d 1384 (9th Cir. 1981) (holding that § 241(f) did not waive deportation of alien who was not "otherwise admissible" due to failure to obtain labor certification and also holding that the Act compels analysis of aliens's status "at time of entry");  Deleon v. INS, 547 F.2d 142 (2nd Cir. 1976), cert. denied, 434 U.S. 841 (1977) (holding that respondent could not avail himself of § 241(f) to waive ground of excludability based on conviction for fraud and misuse of documents under 18 U.S.C. §1546(a)(1994)); Hames-Herrerra v. Rosenberg, 463 F.2d 451, 454 (9th Cir. 1972) (holding that INA § 241(f) did not waive CIMT ground of excludability present at time of entry, stating "241(f) of the Act, at best, only relieves appellant from deportation based upon his fraudulent entries . . . [t]he section speaks only of fraud or misrepresentation and the words "otherwise admissible" do not wipe out the two grounds of excludability and deportability referred to *supra*."); Matter of Garawan, 20 I&N Dec. 938 (BIA 1995) (holding that provisions of former § 241(f) did not waive charge of deportability for an alien whose conditional resident status had been terminated).

Because respondent had convictions at the time of admission, he was inadmissible into the U.S. pursuant to INA § 212(a)(6)(C)(i); § 212(a)(2)(A)(i)(I); § 212(a)(2)(A)(i)(II); and § 212(a)(2)(B), and all the charges of removability should have been sustained.  Because respondent was inadmissible on grounds other than fraud at the time of admission in 1997, he is statutorily ineligible for a § 237(a)(1)(H) waiver, and his application should have been denied.

**5.**  I  ☒ do

☐ do not     desire oral argument before the Board of Immigration Appeals.

**6.**  I  ☒ will

☐ will not    file a separate written brief or statement in addition to the "Reasons(s) for Appeal" written above or accompanying this form.

> **!**  **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

US Immigration and Naturalization Service

| SIGN HERE → | **7.** X by_____ *Diana Alvarez* _____ | _07/25/03_ |
|---|---|---|
| | Signature of Person Appealing | Date |
| | *(or attorney or representative)* | |

**8.**

| Mailing Address of Applicant(s)/Respondent(s) |
|---|
| Appeal by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (BICE) |
| (Name) |
| (Street Address) |
| (Apartment or Room Number) |
| (City, State, Zip Code) |

**9.**

| Mailing Address of Attorney or Representative |
|---|
| Diana I. Alvarez |
| (Name) |
| BICE- Office of the Chief Counsel - 5th Floor |
| (Street Address) |
| 155 South Miami Avenue |
| Miami, FL.  33130 |
| (City, State, Zip Code) |

> **!**  **WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
### (Must Be Completed)

**10.**

I    Diana I. Alvarez _____    mailed or delivered a copy of this notice of appeal

on    July 29, 2003 _____    to    Ira J. Kurzban, Esq. _____

(Date)                                      (Opposing Party)

at    2650 S.W. 27th Avenue, 2nd Floor, Miami, FL.  33133 _____

(Address of Opposing Party)

| SIGN HERE → | X *Diana Alvarez* |
|---|---|
| | Signature of Person Appealing |
| | *(or attorney or representative)* |



**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an Immigration Judges**

---

**1.**   List Name(s) and "A" Numbers(s) of all Respondent(s)/Applicants(s):

Azim, Roy   A#: 46-308-957

*(Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order.)*

**For Official Use Only**

> **!** **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1.

**2.**   I am the  [X] Respondent/Applicant  [ ] INS   *(Mark only one box)*

**3.**   I am   [ ] DETAINED  [X] NOT DETAINED   *(Mark only one box)*

**4.**   My Last hearing was at _____ **April 28, 2003** _____ *(Location, City, State)*

**5.**   **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

[X]   I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated  **June 27, 2003, mailed on July 9, 2003** .

[ ]   I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated
_____ .

[ ]   I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated _____ .

*(Please attach a copy of the Immigration Judge's decision you are appealing.)*

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

EXHIBIT

D

6. | State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" numbers(s) on every sheet.

   **See Addendum attached herein to explain the reason(s) for this appeal.**

   *(Attach additional sheets if necssary)*

   **!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals?   [X] Yes   [ ] No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal?   [X] Yes   [ ] No

   **!** **WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or state- ment after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. | **SIGN HERE** ➡ | X _____
   Signature of Person Appealing
   (or attorney or representative)

   Date: 8/4/03

Form EOIR-26
Revised Sept. 2002

**Page 2 of 3**

*Internet Version*

**10.**

| Mailing Address of Respondent(s)/Applicant(s) |
|---|
| **Roy Azim - Co Kurzban & Kurzban Et Al.** |
| (Name) |
| **445 Grand Bay Drive** |
| (Street Address) |
| **PH-2B** |
| (Apartment or Room Number) |
| **Key Biscayne      FL      33149** |
| (City, State, Zip Code) |
| **(305) 365-6251** |
| (Telephone Number) |

**11.**

| Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|
| **Ira J. Kurzban, Esq.** |
| (Name) |
| **2650 S.W. 27th Avenue, Suite 200** |
| (Street Address) |
| |
| (Suite or Room Number) |
| **Miami, Florida 33133** |
| (City, State, Zip Code) |
| **305-444-0060 Ext. 208** |
| (Telephone Number) |

**NOTE:** You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

## PROOF OF SERVICE
### (You Must Complete This)

I ___Ira J. Kurzban, Esq._____ mailed or delivered a copy of this Notice of Appeal
(Name)

on ___8 / 5 / 03___ to ___Diana Alvarez, Esq., BICE___
(Date)                        (Opposing Party)

at ___155 South Miami Avenue, Room 500, Miami, Florida 33130___
(Address of Opposing Party)

| SIGN HERE ➤ | X _____ |
|---|---|
| | Signature |

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

**Warning:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**Warning:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

| | **Have You?** | |
|---|---|---|
| ☐ Read all of the General Instructions | | ☐ Signed the form |
| ☐ Provided all of the requested information | | ☐ Served a copy of this form and all attachments on the opposing party |
| ☐ Completed this form in English | | ☐ Completed and signed the Proof of Service |
| ☐ Provided a certified English translation for all non-English attachments | | ☐ Attached the required fee or Fee Waiver Request |

Form EOIR-26
Revised Sept. 2002

**Page 3 of 3**

*Internet Version*

## ADDENDUM – NOTICE OF APPEAL (FORM EOIR-26)
## ROY AZIM, Respondent – A#: 46-308-957

The Respondent, Roy Azim, is currently in removal proceedings. The Respondent is cross-appealing the decision of the Immigration Judge mailed on July 9, 2003, which held that Respondent is removable under INA § 237(a)(1)(A) as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time as an alien who procured a visa ... or entry into the United States . . . by fraud or by willfully misrepresenting a material fact under INA § 212(a)(6)(C)(i). In addition, the Respondent is cross appealing the decisions of the Immigration Judge mailed on July 9, 2003, and July 11, 2003, respectively, which declined to rule on Respondent's eligibility for Voluntary Departure under INA § 240(b) as an alternative form of relief from removal. These rulings are in error because: (1) Respondent was <u>not</u> inadmissible in 1997 under INA § 212(a)(6)(C)(i) because (a) his 1981 conviction was vacated ab initio based on the 1991 vacatur and\or the 1998 vacatur on the merits and (b) because he never made a willful misrepresentation because his representations were based on the advice of United States and international lawyers and the evidence indicated he never willfully intended to deceive and (c) because the representations were not material because his alleged "convictions" would have never barred Mr. Azim's admission had the true facts been known; and (2) Respondent is statutorily eligible to receive Voluntary Departure under INA § 240(b) as an alternative form of relief from removal.

THIS APPEAL ON THE ISSUE OF REMOVABILITY SHOULD NOT BE DISMISSED SUMMARILY because: (a) the Respondent does specify the reasons for appeal below and will supplement these grounds with a written brief; (b) the appeal is

not based on a finding of fact or legal conclusion that the Respondent conceded before the Immigration Court;  (c) the Respondent will file a timely brief fully setting forth the grounds and reasons for reversal;  (d) the appeal comes within the Board's jurisdiction under 8 C.F.R. § 1003.1 (b)(3) as an appeal from a decision of an immigration judge in removal proceedings; (e) the appeal is timely as it is filed within 30 days of the mailing of the decision as provided under 8 C.F.R. § 1003.38(b); (f) the appeal meets the statutory and regulatory requirements and is not precluded by statute or regulation; and (g) the appeal is not filed for an improper purpose, such as to cause unnecessary delay and does not lack an arguable basis in law for reasons which follow.

THIS APPEAL AS TO THE ISSUE OF REMOVABILITY SHOULD NOT BE AFFIRMED SUMMARILY because: (a) the Immigration Judge did not properly apply the applicable precedents; (b) the factual and/or legal issues are substantial and warrant a written opinion because questions regarding whether Respondent "willfully" misrepresented "material" facts are crucial to determine whether Respondent is in fact removable under INA § 237(a)(1)(A) as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time as an alien who procured a visa ... or entry into the United States . . . by fraud or by willfully misrepresenting a material fact under INA § 212(a)(6)(C)(i);  (c) the factual and/or legal issues are substantial and warrant a written opinion because questions regarding whether Respondent is in fact eligible for Voluntary Departure are crucial as an alternative form of relief from removal; (d) the errors of the Immigration Judge's decision were not harmless because it was a clear error of law and because it resulted in Respondent's being

subjected to removal; and (e) a finding against Mr. Azim will have adverse effects on numerous family members who obtained their residence through him.

THREE MEMBER REVIEW IS WARRANTED to correct a decision by an Immigration Judge that is plainly not in conformity with the law or with applicable precedents.

THE RESPONDENT ASSERTS THAT THE IMMIGRATION JUDGE MADE THE FOLLOWING ERRORS OR LAW AND/OR FACT, *inter alia*:

1.     The Immigration Judge erred in finding that the Respondent "willfully" misrepresented any facts in his application for an immigrant visa despite the fact that Respondent relied on the advice of specialized immigration counsel and international lawyers and thus believed that his answers on the immigrant visa application were literally true and correct.  See *Matter of Healy & Goodchild,* 17 I & N Dec. 22 (BIA 1979) [Applicant must know that statements are false]; *Matter of S and B-C,* 9 I & N Dec. 436 (A.G. 1961); *Matter of Ilui.* 15 I & N Dec. 288 (BIA 1975); 9 FAM § 40.63 n.5.1.

2.     The Immigration Judge further erred in finding that the Respondent allegedly misrepresented a "material" fact despite substantial and probative evidence in the record that establishes that the 1981 conviction was for a "purely political offense" and\or based on the fact that the 1981 conviction was vacated ab initio in 1991 and\or 1998 on the merits.  See *Kungys v. United States,* 485 U.S. 759, 783 (1988); *Forbes v. INS,* 48 F.3d 439 (9th Cir. 1995);  *Mayo v. Schiltgen,* 921 F.2d 177 (8th Cir. 1990); *United States v. Sheshtawy,* 714 F.2d

1038 (10th Cir. 1983). Under the INA misrepresentations that are not material to obtain a visa or other benefit cannot lead to removability. *See Romero v. INS,* 39 F.3d 977 (9th Cir. 1994); *United States v. Rossi,* 299 F.2d 650 (9th Cir. 1962); *Calvillo v. Robinson,* 271 F.2d 249 (7th Cir. 1959); *Matter of C-T-P-,* 8 I&N Dec. 134 (BIA 1958). Based on the 1991 and\or 1998 vacaturs, Respondent would have never been found inadmissible under the terms of the Foreign Affairs Manual ("FAM"), he, therefore, was not statutorily barred from receiving his immigrant visa since he did not have a conviction for immigration purposes. See *Matter of Roldan,* 22 I & N Dec. 512 (BIA 1999); *Matter of Rodriguez-Ruiz,* 22 I & N Dec. 1378 (BIA 2000).

3.    The so-called "convictions" were clearly political crimes and the political nature of the crimes was never refuted by the Bureau of Immigration and Customs Enforcement ("BICE") or the Immigration Judge.

4.    The Immigration Judge further erred in determining that the Bureau of Immigration and Customs Enforcement ("BICE") demonstrated that Respondent is removable under INA § 237(a)(1)(A), as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time as an alien who procured a visa ... or entry into the United States . . . by fraud or by willfully misrepresenting a material fact under INA § 212(a)(6)(C)(i), by "clear, unequivocal and convincing evidence." See *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 488 (1966); *Murphy v. INS,* 54 F.3d 605 (9th Cir. 1995); *Gameros-Hernandez v. INS,* 883 F.2d 839 (9th Cir. 1989); *see also* 8 C.F.R. § 1240.8(a).

5.      The Immigration Judge further erred in declining to rule on Respondent's application for Voluntary Departure under INA § 240(b) as an alternative form of relief from removal.

6.      The Respondent reserves the right to assert additional or distinct grounds to those listed above when he files his opening brief/statement after a complete and careful consideration of the transcribed record of the proceedings.

k:\azim, roy\bia\azim- addendum - eoir-26.doc 8/5/2003 6:01 PM

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
MIAMI, FLORIDA

IN THE MATTER OF:    )
          )
  Roy AZIM     )    IN REMOVAL PROCEEDINGS
  A 46-308-957   )
          )
RESPONDENT    )
_____)

**CHARGES:**    Section 237(a)(1)(A) of the Immigration and Nationality Act (Act) as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has procured a visa, other documentation, or entry into the United States, or other benefit provided under the Act, by fraud or by willfully misrepresenting a material fact, under section 212(a)(6)(C)(i) of the Act.

        Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Act, under section 212(a)(7)(A)(i)(I) of the Act.

        Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of a crime involving moral turpitude (other than a purely political offence), under section 212(a)(2)(A)(i)(I) of the Act.

        Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substance Act [21 U.S.C. 802]), under section 212(a)(2)(A)(i)(II) of the Act.

        Section 237(a)(1)(A) of the Act as an alien who at the time of entry or adjustment was within one of the classes of aliens inadmissible by law at such time: an alien who has been convicted of two or more offences (other than purely political offences) for which the aggregate sentences to

confinement actually imposed were five years or more, under section 212(a)(2)(B) of the Act.

APPLICATIONS:    Section 237(a)(1)(H) of the Act: Waiver Authorized for Certain Misrepresentations

**On Behalf of the Respondent:**
Ira Kurzban, Esq.
Kurzban, Kurzban, Weinger & Tetzeli, P.A.
2650 S.W. 27th Avenue, 2nd Floor
Miami, FL 33133

**On Behalf of the Service:**
Diana I. Alvarez
Assistant District Counsel
Immigration and Naturalization Service
155 South Miami Ave.
Miami, FL 33130

## WRITTEN DECISION OF THE IMMIGRATION JUDGE

### I. Procedural History

The Respondent is forty-six year old, native and citizen of Kyrgyz Republic. He was admitted to the United States as a legal permanent resident on or about June 6, 1997, in New York, New York. On October 16, 2001, the Immigration and Naturalization Service (Service) issued a Notice to Appear (NTA), charging the Respondent with removability pursuant to section 237(a)(1)(A) of the Act, as an alien who was inadmissible at the time of entry under section 212(a)(6)(C)(i), as having procured a visa by fraud or willfully misrepresenting a material fact. See Exhibit 1. The Service issued Additional Charges of Inadmissibility/Deportability on three separate occasions: October 22, 2001; October 23, 2001; and April 7, 2001. In these documents the Service charges that the Respondent is also removable pursuant to section 237(a)(1)(A) of the Act, as an alien who was inadmissible at the time of entry under the following sections of the Act: 212(a)(7)(A)(i)(I) as an alien immigrant not in possession of a valid immigrant visa; 212(a)(2)(A)(i)(I) as an alien who has been convicted of a crime involving moral turpitude; 212(a)(2)(A)(i)(II) as an alien who has been convicted of a law or regulation of a foreign country relating to a controlled substance; and 212(a)(2)(B) as an alien who has been convicted of two or more offences for which the aggregate sentences to confinement actually imposed were five years or more. See Exhibits 2, 3, and 4.

The Service based the criminal charges of removability on the Respondent's 1981 arrest, conviction, and sentence for seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit. See Exhibit 6. The charge of removability based on the Respondent's procuring a visa by fraud or willful misrepresentation stems from his 1997 application for a U.S. immigrant visa, wherein the Respondent failed to disclose that he had ever been arrested, convicted, or served a jail sentence. See Exhibit 5.

On two occasions the Respondent attempted to have his convictions vacated. In 1991, prior to his application for an immigrant visa, a trade-union committee vacated the Respondent's convictions early. See Exhibit 7. The trade-union made the following finding:

> It has been 3 years and 8 months since his release. The trade-union committee believes that it has been quite sufficient for [Respondent], through demonstration of his exemplary behavior and diligent work, to prove his complete rehabilitation after having served his sentence. Therefore, the committee petitions to vacate his conviction early. <u>See</u> Exhibit 7.

In 1998, a year after the Respondent applied for his immigrant visa, the Supreme Court of the Kyrgyz Republic vacated the Respondent's convictions by acquitting him and overturning his sentence. The Supreme Court made the following finding:

> Under such circumstances, the conclusions of the Criminal Affairs Division on [the Respondent's] guilt in committing fraud and causing significant damage to the victim; illegally obtaining, possessing, and using drugs; illegal possession of a weapon; violating the laws on currency transactions; and causing serious bodily harm are unfounded and he must be acquitted according to [citations omitted] the Criminal Code due to absolute lack of evidence that he committed such crimes; and according to [citations omitted] of the Criminal Code due to fact that his actions did not constitute crimes.

> After evaluating the above and finding that the guilty verdict against [the Respondent] is unfounded according to the aforementioned Articles, the Plenum of the Supreme Court of the Kyrgyz Republic rules that the sentence of the Criminal Affairs Division must be overturned; [the Respondent] must be fully acquitted; the complaint admitted; and the case closed.

On May 14, 2002, the Respondent appeared before this court with counsel, acknowledged receipt of the NTA, admitted allegations one through three, denied allegations four through six, and contested all charges of removability. At a status conference held on Febrary 3, 2003, Respondent's counsel instructed the Court that they would be seeking relief in the form of a waiver for certain misrepresentations, pursuant to section 237(a)(1)(H) of the Act. Thereafter, the Court conducted individual merits hearings on April 23, 2003 and April 28, 2003, to determine whether the Respondent was removable as charged and/or entitled to the relief requested.

## II. Evidence

### A. Documentary Evidence

Exhibit 1 - Notice to Appear (NTA) dated October 16, 2001 & filed with the Court on November 15, 2001

Exhibit 2 - Additional Charges of Inadmissibility/Deportability dated October 22, 2001 & filed

with the Court on October 23, 2001

Exhibit 3 - Additional Charges of Inadmissibility/Deportability dated October 23, 2001 & filed with the Court on November 15, 2001

Exhibit 4 - Additional Charges of Inadmissibility/Deportability dated April 7, 2003 & filed with the Court on April 8, 2003

Exhibit 5 - Application for Immigrant Visa with Translation

Exhibit 6 - Certified Conviction Documents from the Supreme Court of the Kyrgyz Republic with Translation

Exhibit 7 - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of the 1991 Order Vacating Conviction with Translation

Exhibit 8 - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of the 1998 Order Vacating Conviction with Translation

Exhibit 9 - General Authentication Certificate from the Embassy of the United States, Kyrgyz Republic & Copy of Police Certificate with Translation

Exhibit 10 - Curriculum Vitae of Proposed Witnesses: (1) Professor Peter Solomon; (2) Professor of Russian Law; (3) Respondent's Russian Counsel; (4) SNB Representative; (5) Dan Retter; (6) Svetlana Vassiliouk

Exhibit 11 - Order for Dismissal of Indictment, *United States v. Roy Azim*, Case No. 01-1072-CR-MORENO (S.D.Fla. 2002)

Exhibit 12 - Declaration Under Penalty of Perjury of Litvinenko Galina Emelianovma

Exhibit 13 - Expert Affidavit with Attachments of Peter Solomon

Exhibit 14 - Declaration Under Penalty of Perjury of Sabyr Seidinovich Omorbekov

Exhibit 15 - Expert Declaration Under Penalty of Perjury of Karmanov Karpek Shamsedinovich

Exhibit 16 - Affidavit of Daniel Retter, Esq.

Exhibit 17 - U.S. Department of State, Country Reports on Human Rights Practices - Kyrgyz Republic - 2001

Exhibit 18 - Human Rights Watch World Report 2003 - Kyrgyzstan

Exhibit 19 - Amnesty International Report 2002 - Kyrgyzstan

Exhibit 20 - Respondent's Marriage Certificate to Romy A. Marqvardt & Copy of Respondent's Passport

Exhibit 21 - Evidence of United States Citizenship and/or Lawful Permanent Residence & Birth Certificates of Respondent's Children

Exhibit 22 - Affidavit of Mr. Sheldon Lowe

Exhibit 23 - Affidavit of Fred M. Santo, Esq., partner at Katten, Muchin, Zavis & Rosenman

Exhibit 24 - Affidavit of Jeffrey Yager, CPA

Exhibit 25 - Agreement of Trust Creating a Charitable Trust, "The Roy Azim Charitable Foundation" and Internal Revenue Service Designation as a Tax-Exempt Charitable Organization under IRC §§ 501(a) & 501(c)(3)

Exhibit 26 - Letter from David M. Darst, Managing Director, Morgan Stanley Dean Witter

Exhibit 27 - Declaration under Penalty of Perjury of Israilova Vera Usurkanova, Director of Belovodsk Psycho-Neurological Children Boarding School, Kyrgyzstan

Exhibit 28 - Affidavit of Dr. Jack Kachkar, founder and Chief Executive Officer, Miza Pharmaceuticals USA, Inc., & Evidence of Funding from the United States Department of Agriculture through its Rural Business-Cooperative Service Guarantee Loan Program

Exhibit 29 - Psychological Evaluation of Respondent and His Family Performed by Dorita R.

Marina, Ph.D., ABPP

**Exhibit 30** - Letter by Michael Dittoe Assistant United States Attorney for the Southern District of Florida

**Exhibit 31** - Divorce Decree from the Supreme Court, Appellate Division, Second Department, New York, for Respondent and Joulia Saidazimova

### B. Testimonial Evidence

The Respondent was the only individual who testified at the removal proceedings. The Respondent was born in the Kyrgyz Republic and is currently a citizen thereof. He was admitted to the United States in 1997 as a lawful permanent resident and has lived in the United States since this admission. The Respondent's first wife[1] and three oldest children were also granted legal permanent residency status based on the Respondent's application. The Respondent was not aware that his petition for legal permanent residence, completed by his immigration attorney, incorrectly stated that he was born in Kazakhstan. The Respondent testified that he has returned to the Kyrgyz Republic several times since immigrating to the United States, his last departure taking place in 2001. The Respondent's parents, sister, and brother still reside in the Kyrgyz Republic.

The Respondent's immediate family resides in the United States. The Respondent's two oldest children, Rustan Saidazimov, twenty-five years old, and Dillorome Saidazimov, fourteen years old are both legal permanent residents in the United States. They have lived with their mother, the Respondent's ex-wife, Julia Mikhailovna Saidazimova, in New York. However, Rustan recently moved to Miami to live with his father. The Respondent's younger two children, Aziza Saidazimov, twelve years old, and Saida Azim, four years old, have a different mother, Zuhra Nurmotova. Aziza is a legal permanent resident of the United States and has consistently lived with the Respondent, except for last year when she spent time in the Kyrgyz Republic studying the Russian language. The Respondent's youngest child, Saida, was born in the United States but has lived in the Kyrgyz Republic with her mother until a month ago.

The Respondent testified that his "relationship to [his] children is very close." Like most parents he spends time with his children, vacations with them, and supports them financially. When asked what he would like for his children the Respondent stated, "Like every father or parent, I would like for them to grow up and study and get educated in a civilized country like the United States and of course develop a good future." Although some of the Respondent's children have traveled to the Kyrgyz Republic, the Respondent testified that his children feel that the United States is there home. He believed it would be especially hard for his daughters to return to the Kyrgyz Republic. "It would be a complete catastrophe for them because it is a fundamentalist religious country. They grew up in a completely different society. They speak differently. They dress differently... This is a Muslim country and women are treated completely differently." Additionally, his children's return to the Kyrgyz Republic would be

---

[1] The Respondent testified that he attended divorce proceedings in the Kyrgyz Republic; however, the Respondent testified that according to the laws of the Kyrgyz Republic the divorce was not final until he received the judicial decree in New York.

difficult because none of his children speak the language of the Kyrgyz Republic. And although some of his children speak Russian, the Respondent testified that the language of the Kyrgyz Republic "is a completely different language than Russian, the difference you would find between English and Japanese."

In addition to his children, the Respondent's current wife lives in the United States. The Respondent testified that he is married to Romy A. Marqvardt, a United States Citizen. Although the Respondent was confused as to the exact date of their marriage, he later testified that they were married on February 14, 2002. The Respondent testified that he and his wife lived together for a short time before they separated due to problems stemming from his immigration difficulties. However, the Respondent believes that if this matter is resolved positively they will be able to continue their life together.

In addition to his family ties in the United States, the Respondent has significant business ties as well. The Respondent and his son are the owners of International Consulting LLC, a Florida registered financing and management consulting company. International Consulting LLC invests in domestic enterprises, such as pharmaceutical companies. For example, the Respondent's company invested in Miza Pharmaceuticals USA, Inc. Miza focuses on eye care products and is funded by the U.S. Department of Agriculture through its Rural Business-Cooperative Service Guaranteed Loan Program. The Respondent testified that he no longer has any business dealings in the Kyrgyz Republic.

The Respondent's financial ties to the United States are not limited to his business. The Respondent started a foundation in the United States in 1999. The foundation is formally known as the Roy Azim Charitable Foundation; however, the Respondent testified that he often refers to it by his mother's name. The foundation has donated funds to the Red Cross and organizations that help children in need. In addition to the foundation, the Respondent has made other charitable donations while living in the United States. For example, unable to donate blood,[2] the Respondent donated $5,000 to the New York Police Department and $5,000 to the New York Fire Department after the September 11 terrorist attacks.

## III. Credibility

Indications of credible testimony are consistency on direct and cross examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly tells his story. Matter of B-, 21 I&N Dec. 66 (BIA 1995). Adverse credibility determinations are appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony. Matter of S-M-J, 21 I&N Dec. 722 (BIA 1997).

In the present matter, the Court has carefully reviewed the documentary evidence presented and listened to the Respondent's testimony while observing his demeanor. The Court recognizes that the nature of the Respondent's testimony was limited in nature, focusing on personal matters such as his family and his business; however, the Court finds the Respondent to

---

[2] The Respondent has been diagnosed with Hepatitis B.

be credible. No inconsistent testimony was elicited during cross examination, and any discrepancies that arose during testimony were fully explained by the Respondent.[3] Additionally, the Respondent's testimony was consistent with the supporting documentary evidence submitted to this court and no contradictory evidence was submitted by the Service.

## IV. The Respondent procured his entry into the United States by willfully misrepresenting a material fact and is removable pursuant to section 212(a)(6)(C)(i) of the Act.

### 1. Willful Misrepresentation

The requirement that a misrepresentation is willful is satisfied by a finding that the misrepresentation was deliberate and voluntary. Espinoza-Espinoza v. INS, 554 F.2d 921, 925 (9th Cir. 1977); Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir. 1985); Witter v. INS, 113 F.3d 549, 554 (5th Cir. 1997); Mwongera v. INS, 187 F.3d 323, 330 (3rd Cir. 1999). Proof of an intent to deceive is not required. Id. Rather knowledge of the falsity of a representation is sufficient. Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995) (citing Espinoza-Espinoza v. INS, 554 F.2d 921, 925 (9th Cir. 1977) (citing Matter of Hui, 15 I&N Dec. 288 (BIA 1975))).

It is clear from the record that the Respondent was arrested. See Exhibit 6. The Respondent's criminal attorney, Litvinenko Galina Emelianovna, acknowledges the Respondent was convicted and sentenced to eight years of imprisonment by the Trial Board of the Supreme Court of the Kyrgyz Republic in 1981. See Exhibit 12. The Respond contends that any misrepresentation was not willful because he was under the belief, with the advice of counsel, that the law of the Kyrgyz Republic vacated his arrest and conviction in 1991 and therefore he was required to provide a negative answer. In essence, the Respondent's argument is that he believed his answer was "correct." However, the question on the visa application asks whether the Respondent had ever been *arrested, convicted, or served a jail sentence*. Although the Respondent may have believed he was no longer convicted of a crime, he was well aware that he had been "arrested" and had "served a jail sentence." See Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995) (quoting the Board of Immigration Appeals, "The question on the visa application is not circumscribed or limited nor does it legitimately permit interpretations of the term "arrest."). The Court also refuses the Respondent's argument that he relied on his attorney's advice. Id. Therefore, the Court finds the Respondent's misrepresentation on his Application for Immigrant Visa was willful.

### 2. Material Fact

The requirement that a misrepresentation is material is satisfied if the misrepresentation has a natural tendency to influence the decision of the Service. Kungys v. United States, 485 U.S. 759, 772 (1988). The Attorney General held in Matter of S- and B-C-, that a misrepresentation made in connection with an application for a visa or other documents is material if either (1) the

---

[3] For example, while testifying, the Respondent referred to his charitable foundation by a different name than listed on the Agreement of Trust. The Respondent clarified on redirect examination that "there is no difference between Poolat (phonetic spelling) and The Roy Azim Foundation. It is one and the same."

alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might will have resulted in a proper determination that he be excluded. Matter of Belmares-Carrillo, 13 I&N Dec. 195 (BIA 1969) (citing Matter of S- and B-C-, 9 I&N Dec. 436 (BIA 1960)). In the case at hand, the Respondent denied having been arrested, convicted, and serving a sentence of seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit. The Respondent would have been inadmissible based on these facts and therefore the misrepresentation was material.

The Respondent's material misrepresentation is not nullified by the fact that his conviction was vacated *ab initio* a year after he filed his Application for an Immigrant Visa. Developments or happenings occurring afterwards cannot vitiate the fraud committed at the time the document was obtained. Matter of G-R-, 7 I&N Dec. 508 (BIA 1957) (citing United States ex rel. Jankowski v. Shaughnessy, 186 F.2d 580 (2nd Cir. 1951); Landon v. Clarke, 239 F.2d 631 (1st Cir. 1956)). The vacation of the Respondent's conviction *ab initio* does not retroactively render ineffective the misrepresentation the Respondent committed when he denied being arrested, convicted, and sentenced.

The Court finds the Respondent procured his visa by a willful misrepresentation of a material fact and therefore the Service has proven by "clear, unequivocal, and convincing evidence," that the Respondent is removable. Woodby v. United States, 385 U.S. 276, 286 (1966).

## IV. Waiver for Certain Misrepresentations

This Court has found the Respondent is removable pursuant to Section 212(a)(6)(C)(i) of the Act, as an alien who has procured a visa, other documentation, or entry into the United States, or other benefit provided under the Act, by fraud or by willfully misrepresenting a material fact; however, section 237(a)(1)(H) of the Act provides a waiver for this ground of inadmissibility.[4] In order to demonstrate eligibility for relief under Section 237(a)(1)(H) of the Act, the Respondent must establish that he is statutorily eligible and that he merits relief in the exercise of discretion.

---

[4] The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 212(a)(6)(C)(i), whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)) who –

  (i) (I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

  (II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission...

A waiver of deportation for fraud or misrepresentation granted under this subparagraph shall also operated to waive deportation based on the grounds of inadmissibility directly resulting from such fraud or misrepresentation.

To be eligible for a waiver under Section 237(a)(1)(H)(i) of the Act, the Respondent must show two things: (1) that he is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence and (2) that he is "otherwise admissible" to the United States at the time of such admission. The Respondent has both a  United States Citizen child and a United States Citizen wife that qualify him for a this waiver.[5]  See Exhibits 20 and 21.

In addition to possessing a qualifying relative, the Respondent must also show that he was "otherwise admissible" at the time of his admission to the United States.  The meaning of "otherwise admissible" and what grounds of inadmissibility this form of relief actually waives has been unclear in the past.  Compare INS v. Errico, 385 U.S. 214 (1966); with Reid v. INS, 420 U.S. 619 (1975).  However, the Supreme Court has made it clear that to be "otherwise admissible" the Respondent must not be inadmissible on some ground other than the entry fraud. INS v. Yueh-Shaio Yang, 519 U.S. 26, 30 (1996).

In 1981, the Respondent was arrested, convicted, and sentenced to seven years in the Kyrgyz Republic for crimes involving the infliction of serious harm, narcotics violations, firearms violations, currency violations, and theft by deceit.  See Exhibit 6.  However, the Supreme Court of the Kyrgyz Republic found there was a complete lack of evidence and acquitted the Respondent of all criminal wrongdoing.  See Exhibit 8.  Based on these findings the Respondent's convictions were vacated ab initio.

Section 101(a)(48)(A) of the Act defines the term "conviction" as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication has been withheld where–
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

The Board of Immigration Appeals has recently addressed the issue of vacated convictions on multiple occasions.  In a recent decision the Board found that,

> there is a difference between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships.  Thus, if a court with jurisdiction vacates a

---

[5] The Respondent acquired his permanent resident status through misrepresentation and therefore has never been lawfully admitted for permanent residence.  Matter of Koloamatangi, 23 I&N Dec. 548 (BIA 2003).  Thus, the Respondent's children cannot obtain derivative lawful permanent resident status from the Respondent and these children cannot qualify the Respondent for a waiver under Section 237(a)(1)(H).

conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a "conviction" within the meaning of section 101(a)(48)(A). If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains "convicted" for immigration purposes. The fact that the case at bar involves a foreign conviction does not alter our analysis with respect to the purpose of the subsequent vacation of the conviction. Matter of Pickering, 23 I&N Dec. 621 (BIA 2003); see also Matter of Roldan, 22 I&N Dec. 512 (BIA 1999); Matter of Rodriguez-Ruiz, 22 I&N Dec. 1378 (BIA 2000).

In the matter before this Court, the Respondent's convictions were vacated on two separate occasions. Although the first attempt to vacate the Respondent's convictions was based on a rehabilitative statute, the second vacation was based on a substantive defect in the underlying criminal proceedings. In 1991, a trade-union committee vacated the Respondent's convictions based on their finding that the Respondent had demonstrated, through exemplary behavior and diligent work, his complete rehabilitation. See Exhibit 7. However, in 1998, the Supreme Court of the Kyrgyz Republic vacated the Respondent's convictions based on their finding that the Respondent's convictions were unfounded and acquitted the Respondent due to an absolute lack of evidence that the Respondent had ever committed such crimes. See Exhibit 8. The Supreme Court of the Kyrgyz Republic looked to the evidentiary basis of the Respondent's conviction, found it to be nonexistent and acquitted the Respondent; this vacation of the Respondent's convictions was undoubtedly based on the merits of the underlying conviction. Based on these findings by the Supreme Court of Kyrgyz Republic, the Respondent's convictions are eliminated for immigration purposes and thus cannot be the basis of any grounds of inadmissibility.

Section 237(a)(1)(H) of the Act requires that the Respondent was "otherwise admissible" to the United States at the time of such admission. The Respondent's convictions were vacated *ab initio* in 1998, a year after the Respondent's admission to the United States. Under Dameron v. United States, the vacation of the charges *ab initio* should be given retroactive effect and relate back to the date of the Respondent's original conviction in 1991. Dameron v. United States, 488 F.2d 724 (5th Cir. 1974).[6] In that case, an individual was convicted of a felony in 1951. Based on this earlier felony conviction, he was convicted in 1971, under a statute that prohibited individuals convicted of a crime punishable for a term exceeding one year, to transport a firearm. Id. Subsequent to his second conviction, the individual obtained an order vacating his first felony conviction *ab initio*. Id. The Court held that the order vacating his first conviction *ab initio* related back to the date of his original conviction and therefore, altered the individual's status at the time of his second conviction. Id.

[6] This case is binding on the Eleventh Circuit under the finding in Bonner v. City of Prichard, that the decisions of the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to close of business on that date, would be binding as precedent on all federal courts within the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

Similarly, in the matter before this Court, the Respondent was convicted in 1981 and based on these convictions would have been inadmissible in 1997 at the time of his entry to the United States. However, subsequent to his entry, the Respondent obtained an order vacating his 1981 convictions *ab initio*. This order vacating the Respondent's convictions *ab initio* relates back to the date of his convictions, 1981, and alters the Respondent's admissibility status at the time of his entry in 1997. Therefore, the Respondent was "otherwise admissible" in 1997.

## B. Discretion

The question whether to exercise discretion favorably necessitates a balancing of an alien's undesirability as a permanent resident with the social and humane considerations present to determine whether a grant of relief is in the best interests of this country. Adverse factors may include the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other additional evidence of the alien's bad character or undesirability as a lawful permanent resident of the United States. Favorable considerations may include family ties in the United States; residence of a long duration in this country, particularly where it commenced when the alien was young; evidence of hardship to the alien or his family if deportation occurs; a stable employment history; the existence of property or business ties; evidence of value and service to the community; and other evidence of the alien's good character. Matter of Tijam, 22 I&N Dec. 408 (BIA 1998) (citing Hernandez-Robledo v. INS, 777 F.2d 536 (9th Cir. 1985); Matter of Mendez-Moralez, 21 I&N Dec. 296 (BIA 1996)).

In the matter before this Court, the Respondent has presented significant equities, and the Service has failed to present any serious adverse factors. The Respondent has lived in the United States for six years and has substantial family ties in the United States. The Respondent's immediate family, including his four children, live in the United States. The Respondent has provided financially for his children. If the Respondent were removed to the Kyrgyz Republic, the hardship to his family would be great. His children have spent much of their formative years in the United States and consider this their home. Their difficulty adjusting to life in the Kyrgyz Republic would be magnified by their inability to speak the language. This adjustment would be most severe for the Respondent's daughters, who would face a future in a country that the Respondent has testified condones the disparate treatment of women. Therefore, the Respondent's removal will have a substantial effect on his four children.

In addition to family ties, the Respondent has significant business ties in the United States. The Respondent is the owner of a successful corporation that invests in many domestic enterprises. Returning to the Kyrgyz Republic would be a substantial economic hardship on the Respondent and his family as he no longer has any business dealings there. In addition to running a successful business, the Respondent is of value and service to the community. The Respondent has created a foundation that provides substantial assistance to children in need.

Moreover, many of the adverse factors to be considered when making such a discretionary determination are not evident from the record. Of particular interest to the Court is the Respondent's previous convictions in the Kyrgyz Republic. These convictions have been vacated on the merits and therefore are not convictions for immigration purposes. Matter of Rodriguez-Ruiz, 22 I&N Dec. 1378 (BIA 2000). However, not only was the Court prohibited from considering these convictions to determine removability, the Court was unable to consider the nature, seriousness, and underlying circumstances of these convictions based on the Service's inability to question the Respondent on this matter. This is based on an agreement between the United States Attorney for the Southern District of Florida and the Respondent. This agreement states, "no information disclosed by your client during the debriefing or his testimony will be offered in evidence against your client in any criminal or civil proceeding, nor may the government make any derivative use of the statements." See Exhibit 31.

In accordance with INS v. Yueh-Shaio Yang, the Court may also look to the initial fraud or misrepresentation for which the Respondent is being removed. INS v. Yueh-Shaio Yang, 519 U.S. 26 (1996). However, the Respondent explained that his failure to disclose that he had been arrested, convicted, and sentenced was based on the 1991 vacation order and the advice of counsel. Although this does not vitiate the misrepresentation itself, it does not demonstrate that the Respondent was attempting to circumvent our immigration laws.

Although the Service did not present any serious adverse factors that would weigh against a grant of discretionary relief, the Service did provide evidence that diminished the Respondent's equities. For example, the Respondent and his current wife have been married a very short time. The Service also contends the hardship to the Respondent's children if they are forced to return to Kyrgyz Republic will be lessened because of their ability to speak Russian. Moreover, the Respondent's extended family still reside in the Kyrgyz Republic. However, this evidence does not outweigh the factors favorable to the Respondent.

Considering all of the equities in the Respondent's favor and balancing those against the adverse evidence presented by the Service, the Court finds the Respondent has shown that he merits a favorable exercise of discretion.

## ORDERS OF THE IMMIGRATION JUDGE

**IT IS HEREBY ORDERED** that the Respondent's request for a waiver for certain misrepresentation under Section 237(a)(1)(H) of the Act is **GRANTED**.

Dated this 27 day of June, 2003.

_____
Honorable Pedro A. Miranda
United States Immigration Judge

DATE SERVED 7/9/03
(TA)
(R/PR)
APPEAL DUE

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
U.S. IMMIGRATION COURT
155 S. MIAMI AVE. 9TH FLOOR
MIAMI, FL. 33130

IN THE MATTER OF:

Roy Azim                          CASE NO. A46-308-957
RESPONDENT/~~APPLICANT~~)

IN ~~DEPORTATION/EXCLUSION~~/REMOVAL PROCEEDINGS)    **DECISION ON A MOTION**

 **To Clarify Court's Order Of June 27, 2003**
 **HAS BEEN FILED IN THE ABOVE CAPTIONED CASE. THE MOTION HAS BEEN
DULY CONSIDERED AND IT APPEARS TO THE COURT THAT:**

[  ]    THE REQUEST IS TIMELY AND REASONABLE. THEREFORE, IT IS HEREBY
        ORDERED THAT THE MOTION BE **GRANTED**.

[✔]    THE MOTION HAS BEEN DULY CONSIDERED AND IT APPEARS TO THE COURT
        THAT NO SUBSTANTIAL GROUNDS HAVE BEEN ADVANCED TO WARRANT ITS
        GRANT. THEREFORE, IT IS HEREBY ORDERED THAT THE MOTION BE AND THE
        SAME IS HEREBY **DENIED**.

[✔]    _Order of June 27, 2003 will stand_
        _as issued._

                                      PEDRO A. MIRANDA
                                      U.S. IMMIGRATION JUDGE
                                      DATE SIGNED: 7/11/03

CC:   DISTRICT COUNSEL
      COUNSEL FOR RESPONDENT/~~APPLICANT~~
      ~~RESPONDENT/APPLICANT~~

**CERTIFICATE OF SERVICE**
This document was served by:  Mail:(M)  Personal Service:(P)
To: Alien[ ]  Alien c/o Custodial Officer[ ]  Alien's Att/Rep.[ ]  INS[ ]
Date: 7/11/03       Court Staff By:

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

| TYPE OF PROCEEDING: | | DATE |
|---|---|---|
| ☐ Deportation   ☐ Bond Redetermination   ☐ Disciplinary<br>☑ Removal   ☐ Motion to Reopen/Reconsider<br>☐ Exclusion   ☐ Rescission | | ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)<br><br>**46-308-957** |

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

| NAME | (First) | (Middle Initial) | (Last) |
|---|---|---|---|
| | **Roy** | **Azim** | |

| ADDRESS | (Number & Street) | (Apt. No.) | (City) | (State) | (Zip Code) |
|---|---|---|---|---|---|
| | C\o Kurzban & Kurzban Et Al. | 2650 | S.W. 27th Avenue, Suite 200 **Miami, Fl** | | 33133 |

Please check one of the following:

☑ 1. I am a member in good standing of the bar of the highest court(s) of the following State(s), possessions(s), territory(ies), Commonwealth(s), or the District of Columbia:

Name(s) of Court(s)      State Bar No. (if applicable)

**Florida**           **225517**

(Please use space on reverse side to list additional jurisdictions.)

I ☐ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2. I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization):

☐ 3. I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R   292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID# | TELEPHONE NUMBER (Include Area Code) | DATE |
|---|---|---|---|
| | | **305-444-0060 Ext. 208** | |

| NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT) | ADDRESS    ☐ Check here if this is a new address. |
|---|---|
| **Ira J. Kurzban** | Kurzban, Kurzban, Weinger & Tetzeli, P.A.<br>2650 S.W. 27th Avenue, Suite 200<br>Miami, Florida 33133 |

**Certificate of Service**

I **Ira J. Kurzban**    mailed or delivered a copy of the foregoing on    8/5/03    to the Immigration
    (Name)                                                         (Date)

and Naturalization Service at    **155 South Miami Avenue, Room 500, Miami, Florida 33130**
                                                             (Address)

| OMB#1125-0005 | X    Signature of Attorney or Representative | FORM EOIR-27<br>August 99 |
|---|---|---|

**(Note: Alien may be required to sign Acknowledgement and consent on reverse side of this form.)**

---

I HEREBY ACKNOWLEDGE THAT THE ABOVE-NAMED ATTORNEY OR REPRESENTATIVE REPRESENTS ME IN THESE PROCEEDINGS AND I CONSENT TO THE DISCLOSURE TO HIM/HER OF ANY RECORDS PERTAINING TO ME WHICH APPEAR IN ANY EOIR SYSTEM OF RECORDS.

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
|---|---|---|
| Azim, Roy | x | |

(NOTE: *The Privacy Act of 1974 requires that if the person being represented is or claims to be a citizen of the United States or an alien lawfully admitted for permanent residence, he/she must sign this form.*)

---

**APPEARANCES** An appearance shall be filed on EOIR Form-27 by the attorney or representative appearing in each appeal before the Board of Immigration Appeals (see 8 C.F.R. 3.38(g)) , even though the attorney or representative may have appeared in the case before the Immigratioin Judge or the Immigration and Naturalization Service. When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature shall constitute a representation that, under the provisions of 8 C.F.R. Chapter 3, he/she is authorized and qualified to represent individuals. Thereafter, substitution or withdrawal may be permitted upon the approval of the Board of a request by the attorney or representative of record in accordance with Matter of Rosales, 19 I&N Dcc. 655 (1988). Further proof of authority to act in a representative capacity may be required.

**REPRESENTATION** -A person entitled to representation may pe represented by any of the following:

(1) Attorneys in the Unitted States as defined in 8 C.F.R. 1.1(f).

(2) Law students and law graduates not yet admitted to the bar as defined in 8 C.F.R. 292.1(a)(2).

(3) Reputable individuals as defined in 8 C.F.R. 292.1(a)(3).

(4) Accredited representatives as defined in 8 C.F.R. 292.1(a)(4).

(5) Accredited officials as defined in 8 C.F.R 292.1(a)(5).

**THIS FORM MAY NOT BE USED TO REQUEST RECORDS UNDER THE FREEDOM OF INFORMATION ACT OR THE PRIVACY ACT. THE MANNER OF REQUESTING SUCH RECORDS IS CONTAINED IN 28 C.F.R 16.1-16.11 AND APPENDICES.**

Public reporting burden for the collection of information is estimated to average 6 minutes per response, including the time for reviewing the data needed, completing and reviewing the collection of information, and record-keeping. Send comments regarding this burden estimate or any other aspect of this information collection including suggestions for reviewing this burden to the Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041.

(Please attach additional sheets of paper as necesary.)

*U. S. GPO: 2000-461-076/21608

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

03 - 22225

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROY AZIM

## DEFENDANTS

CIV-MARTINEZ

THE UNITED STATES OF AMERICA, DUBÉ

and its agents

MAGISTRATE JUDGE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

AUG 18 2003

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
305-444-0600
KURZBAN KURZBAN WEINGER & TETZELI, P.A.
2650 SW 27 Ave, 2fl., Miami, Florida 33138

ATTORNEYS (IF KNOWN)

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade 1:03CV-22225/JEM/Dube

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | B☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers Liability | | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 540 Mandamus & Other | | | X☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | A OR B |
| ☐ 290 All Other Real Property | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Declaratory Judgment Act, 28 U.S.C. § 1361 and Administrative Procedure Act, 5 U.S.C. § 702

LENGTH OF TRIAL   Declaratory judgment and injunctive relief for Violation of Due Process and INA sec. 101(a)(27)
via ____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD

IRA J. KURZBAN, ESQ.

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT $150.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____