**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

2004 AUG -3  PM 4: 21

CLARENCE MADDOX
CLERK U S. DIST. CT.
S. OF FLA - MIA

ROY AZIM,

Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

Defendants.

_____/

Case No.:    03-22225-CIV-MARTINEZ

**ORIGINAL**

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, **Roy AZIM, by and through** the undersigned counsel, hereby submits the following Proposed Findings of Fact and Conclusions of Law pursuant to the Court's Order signed on May 28, 2004:

**I.       PROPOSED FINDINGS OF FACT**

**A.       Background**

Plaintiff, Mr. Roy Azim, is a forty-six year-old citizen of the Kyrgyz Republic.   On June 6, 1997, he was admitted as a lawful permanent resident to the United States, in New York, New York. *Id.* This status has never been extinguished and he currently holds lawful permanent resident ("LPR") status.

On July 24, 1981, Mr. Azim was fraudulently convicted in the former Soviet Union of various purported crimes.  Based on this erroneous conviction, later vacated, he was imprisoned for a period of almost seven years, from July 1981 to March 1988. On November 26, 1991, Mr. Azim's

1

1981 conviction was vacated. On July 10, 1998, Mr. Azim's conviction was vacated a second time, this time vacated *ab initio* by the Supreme Court of Krygystan, which held that the conviction was politically motivated and there was simply no evidence whatsoever supporting Mr. Azim's conviction or commission of the crimes.

Based upon the undisputed advice of his immigration attorney and international legal counsel, Mr. Azim did not view the subsequently vacated arrest and conviction in the former Soviet Union as requiring disclosure in his 1997 application for an immigrant visa.

**B.      Removal Proceedings**

On October 16, 2001, Immigration and Customs Enforcement ("ICE") issued a Notice to Appear ("NTA"), placing Mr. Azim in removal proceedings. The NTA charged Mr. Azim with being deportable from the United States under Section 237(a)(1)(A) of the Immigration and Nationality Act ("INA" or "Act"), as an alien inadmissible at time of entry. Mr. Azim was deemed to be inadmissible under Section 212 (a)(6)(C)(i) of the INA, on the theory that he procured his residency by fraud because he failed to disclose his now vacated conviction when he applied for residency.

The ICE subsequently charged Mr. Azim with additional grounds for inadmissibility or deportability under the Act, namely, that he is removable pursuant to Section 237 (a)(1)(A) of the INA, as an alien who was allegedly inadmissible at the time of entry under the following further sections of the Act: (1) § 212(a)(7)(A)(i)(I), as an alien immigrant not in possession of a valid immigrant visa; (2) § 212(a)(2)(A)(i)(I), as an alien who has been convicted of a crime involving moral turpitude; and (3) § 212(a)(2)(A)(i)(II), as an alien who has been convicted of a law or regulation of a foreign country relating to a controlled substance; and (4) § 212(a)(2)(B), as an alien

who has been convicted of two or more offenses for which the aggregate sentence to confinement actually imposed were five years or more.

On May 14, 2002, a hearing was held before an Immigration Judge ("IJ") where Plaintiff, through his present counsel, contested all charges of removability. At a status conference held before the IJ on February 3, 2003, Mr. Azim argued that he did not make any willful or knowing misrepresentations of material fact in his immigrant visa application because: (1) his "conviction" was fraudulent and pretextual and was vacated *ab initio*; and (2) he relied on the advice of both United States and Russian law experts who informed him he did not have to disclose the arrest or conviction because the conviction was deemed null and void. Plaintiff further argued that, even assuming *arguendo* any misrepresentations could be said to have been made, he is entitled to relief based on **the provisions of the INA providing** for a waiver for certain misrepresentations, pursuant to INA § 237 (a)(1)(H), 8 U.S.C. 1227(a)(1)(H).

On April 23, 2003 and April 28, 2003, the IJ conducted individual merits hearings to determine whether Mr. Azim was removable as charged and/or entitled to the relief requested.

On June 27, 2003, the IJ rendered a written decision finding that although Mr. Azim had committed a willful misrepresentation of material fact in the procurement of his visa, he was not inadmissible because the "crimes" he committed were vacated and he was deserving of a waiver for the misrepresentations under INA § 237 (a)(1)(H), 8 U.S.C. 1227(a)(1)(H). The Court therefore granted Mr. Azim's request for a waiver and reaffirmed his status as a lawful permanent resident.

On July 29, 2003, the ICE filed a Notice of Appeal to the BIA, contesting the IJ's granting of Mr. Azim's request for a waiver and the reaffirmation of his residency.

On August 26, 2003, Mr. Azim, through his present counsel, filed a cross-appeal to the BIA, challenging various aspects of the IJ's decision with regard to misrepresentations. Although Mr. Azim's case is currently on appeal before the BIA his status as a lawful permanent resident (LPR) continues to be in effect and has not been extinguished or terminated.

### C.   **Instant Proceedings**

On August 18, 2003, Mr. Azim filed the instant action in this Court, seeking declaratory and injunctive relief from this Court to permit him to travel without penalty during the pendency of the government appeal and his cross-appeal to the BIA to visit his closest relative in the Kyrgyz Republic who is extremely ill. Mr. Azim claims that the instant action for declaratory and injunctive relief is necessitated by the uncertainty which has been created by the Defendant and its agents in preventing lawful permanent residents in removal hearings from traveling abroad without losing any rights and without being incarcerated upon their return.

On February 13, 2004, U.S. Citizenship and Immigration Services ("CIS") issued Mr. Azim a Reentry Permit good for two years. Previously, on September 2, 1998, Mr. Azim had been granted another reentry permit which expired on September 2, 2000.

Pursuant to this Court's scheduling order, on July 21, 2004, Plaintiff completed the depositions of the following two individuals: (1) Thomas Winkowski, Director of Field Operations for South Florida, Bureau of Customs & Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"), Miami, Florida; and (2) Michael D. Rozos, Field Office Director, Miami Detention & Removal Office, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security, 7880 Biscayne Blvd., Miami, FL. This deposition has revealed new information supporting the instant motion for summary judgment.

At the deposition, Mr. Winkowski testified that he was in charge of the entire field operation of the Miami CBP. His jurisdiction covers the entire geographical area from West Palm Beach to Key West. He supervises approximately 1,800 CBP inspectors, customs agents and other CBP officers. According to Mr. Winkowski, under his supervision, "watch commanders" make final field decisions as to whether to admit individuals seeking to enter the United States, including LPRs, at the Miami International Airport, Miami Seaport, and other inspection points within his jurisdiction.

During the deposition, Mr. Winkowski admitted that he was familiar with Mr. Azim's case and the instant action. He confirmed that Mr. Azim would be deemed an "arriving alien" if he left the United States **because he departed from** the United States while his removal proceeding was pending **and because he was inadmissible based** on his "fraud" committed at the time of his last entry into the **United States. He further testified that** he would place an LPR in a new removal proceeding upon his return from a trip abroad regardless of whether the LPR won before an IJ if he departed the U.S. while the Government's appeal to the BIA was pending.

Mr. Winkowski acknowledged that LPRs maintain their status until a final order of removal is issued and that they are eligible to travel abroad if they have in their possession proof of status, such as reentry permit or Resident Alien Card. However, he testified that he would still place Mr. Azim in a removal proceeding upon his **return** from a trip abroad. He further acknowledged that he never received any training or memos mandating him to interpret the statute to issue Mr. Azim an NTA. Finally, Mr. Winkowski admitted that whether or not Mr. Azim has a reentry permit has no bearing on his decision to issue him an NTA.

## II.    PROPOSED CONCLUSIONS OF LAW

A.   **Defendant's Construction of INA § 101(a)(13)(C)(iv) and 8 C.F.R. § 1003.4 to Deem the Plaintiff as an Arriving Alien Upon His Return from a Brief Trip Abroad is Erroneous**

   1.   **Pre-IIRIRA and Post-IIRIRA Versions of INA § 101(a)(13)(C)(iv)**

The statute at issue here, 8 U.S.C. § 1101(a)(13)(C), was amended in 1996 by § 301(a)(13) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (Sep. 30, 1996).

Prior to its amendment, § 1101(a)(13) provided as follows:

> The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.* (emphasis added).

Under the old statute, it is clear that Congress intended to limit "entry" of returning LPRs only to those whose departure was *occasioned by* "legal process," including deportation and exclusion proceedings. However, it is not clear what the phrase "occasioned by legal process" means because the statute did not define the meaning of that term. What is clear, however, is that the phrase could not have meant that a mere departure by an LPR for a trip abroad during a deportation proceeding would have deemed him as an arriving alien seeking a new entry upon his return. *See Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993) (finding that the Supreme Court in *Landon v. Plasencia* "recognized that, unlike an alien seeking to enter the United States for the first time, a

returning resident alien retains a constitutional right to due process . . . The fact that an alien is

subject to deportation proceedings does not affect his status as a permanent resident alien.  A

permanent resident alien's status terminates only when the order of deportation is affirmed by the

BIA or otherwise becomes administratively final) (citing *Landon v. Placencia*).

Unlike the old statute, the new statute uses the phrase "under legal process seeking removal"

instead of the phrase "occasioned by legal process" in the old statute. INA § 101 (a)(13)(C), 8

U.S.C. § 1101 (a)(13)(C) defines when an LPR shall be regarded as seeking admission into the

United States, and provides as follows:

> (C)     An alien lawfully admitted for permanent residence in the United States shall
> not be regarded as seeking an admission into the United States for purposes of the
> immigration laws unless the alien-- . . .  (iv) has departed from the United States
> while under legal process seeking removal of the alien from the United States,
> including removal proceedings under this chapter and extradition proceedings, . . . .
> INA § 101 (a)(13)(C)(iv), 8 U.S.C. § 1101 (a)(13)(C)(iv) (emphasis added).

The new statute does not define the phrase "under legal process seeking removal of the

alien." Nor is there any legislative history or any case law indicating that change of the controlling

phrase from "occasioned by legal process" in the old statute to "under legal process seeking removal

of the alien" in the new statute was intended to deem any LPR who departs the U.S. during his

removal proceeding as an arriving alien, regardless of whether he won before an IJ or whether he was

issued a reentry permit by the Defendant. Thus, this Court is faced with a case of first impression.

**2.      Effect of Defendant's Construction of § 101(a)(13)(C)(iv)**

**a.  Defendant's Construction of § 101(a)(13)(C)(iv) is Contrary to Its
Own Regulations**

Defendant argues that, under § 1101(a)(13)(C)(iv), any returning LPR who departs the United

States while his removal proceeding is pending, forfeits his LPR status upon his return and,

therefore, should be treated as an "arriving alien" seeking admission to the United States for the first time. Defendant's interpretation of § 1101(a)(13)(C) is extremely broad and would include returning LPRs such as the instant Plaintiff who departs the U.S. *only after having won before an IJ in a removal proceeding and having been issued a reentry permit by the Defendant.* (emphasis added). This extremely broad interpretation is problematic because it directly contradicts Defendant's own regulations.

A reentry permit is documentary evidence establishing a person's LPR status which allows the person to return to the United States from his trip abroad "without obtaining a returning resident visa." 8 C.F.R. § 223.1. Defendant's own regulations explicitly state that issuance of a reentry permit shall have no effect on Mr. Azim's pending removal proceeding. *See* C.F.R. § 223.2(f) ("Issuance of a reentry permit or refugee travel document to a person in exclusion or deportation proceedings *shall not affect those proceedings.*") (emphasis added). In addition, Defendant's own regulations mandate the issuance of documentation evidencing LPR status to LPRs in removal proceedings because issuance of such document does not affect those proceedings. *See* C.F.R. § 264.5(g) (*mandating* issuance of a card evidencing LPR status, e.g., temporary Form I-551 or Permanent Resident Card, to LPRs in exclusion or deportation proceedings, and stating that issuance of such card "*shall not affect those proceedings.*") (emphasis added).

The purpose of these regulations is to avoid the dilemma that the defendant wishes to create in this case by refusing to put Mr. Azim back in the situation he left after he travels abroad. This purpose is evidenced by the fact that Defendant did not amend 8 C.F.R. §223.2(f), even after the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IRIRA") that created §1101(a)(13)(C)(iv). *See* 59 FR 1465, Jan. 11, 1994 (establishing 8 CFR §223.2); 62 FR 10352,

8

Mar. 6, 1997 (amending 8 CFR §223.2 post-IRRIRA but not 8 CFR §223.2(f)). Construing §1101(a)(13)(C)(iv) contrary to this purpose would produce an unintended result of placing a returning LPR who was given permission by the Defendant to travel (by virtue of the reentry permit), into a new removal proceeding. Such result in turn would effectively nullify the pending removal proceeding, including the immigration judge's authority and decision, when the Defendant's own regulations provide otherwise. Thus, it is clear that the Defendant did not amend 8 CFR §223.2(f) despite its awareness of §1101(a)(13)(C)(iv), because it clearly sought to avoid the unintended result by harmonizing the statute with the remainder of the INA by giving §1101(a)(13)(C)(iv) a sensible reading that would not undermine the existing removal proceeding.

Nonetheless, Defendant argues that §1101(a)(13)(C)(iv) should be read in a way that directly contradicts its own regulations. The Court rejects this interpretation because it directly contradicts the very purpose of Defendant's own regulations regarding reentry permits that were designed to prevent the unintended result the Defendant is seeking to bring about in this case. The only sensible reading of the statutes and regulations would require the Defendant to admit Mr. Azim as an LPR without commencing a new removal proceeding, thus preserving the status quo of the pending proceeding, as explicitly stated in the Defendant's regulations.

In addition, Defendant's construction of § 101(a)(13)(C)(iv) is at odds with federal statutory authority which allows an alien the right to travel without penalty *unless and until* his or her status as a lawful permanent resident is extinguished by judicial action. *See* INA § 101 (a)(27)(A), 8 U.S.C. § 1101 (a)(27)(A) (providing for "special immigrant" status for LPRs returning from a temporary visit abroad); *Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993) (A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise

9

becomes administratively final).

**b.    Defendant's Construction of § 1101(a)(13)(C)(iv) Would Lead to Absurd Results**

In construing a particular statute, this Court is not bound to follow literal application of the statutory language if doing so would lead to absurd result, contrary to the legislative intent. *See Griffin v. Oceanic Contractors*, 458 U.S. 564, 571 (1982) (The plain meaning of a statute does not control if "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."); *Perry v. Commerce Loan Co.*, 86 U.S. 852, 857 (U.S. 1965) ("When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole this Court has followed that purpose, rather than the literal words."); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) (literal interpretation of statute that causes absurd results is to be avoided if at all possible); *United States v. Kattan-Kassin*, 696 F.2d 893, 895 (11th Cir. 1983) (when the statutory language "is ambiguous or leads to absurd results, . . . [we] may consult the legislative history and discern the true intent of Congress."); *Greenfiled Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004) ("[O]ur interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy. Further, we may adopt a restricted rather than a literal meaning of a word where acceptance of the literal meaning would lead to absurd results"); *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (same).

Based on the literal interpretation of Section 1101(13)(a)(C)(iv), Defendant argues that Mr. Azim should be treated as an arriving alien upon his return. Based on Defendant's position, theoretically, Mr. Azim can be placed in multiple removal proceedings indefinitely based on

identical charges, as long as he takes multiple trips abroad while the current proceeding is pending. Defendant's literal interpretation of § 1101(a)(13)(C)(iv) is erroneous because it would lead to absurd results, contrary to the intent of Congress.  Defendant's erroneous interpretation of § 1101(a)(13)(C)(iv) would effectively defeat the purpose of the present removal proceeding by nullifying the IJ's order which has full force until the BIA decides the pending proceeding. Defendant does not contest, nor can it contest, that the IJ's order has full force and effect until the BIA decides otherwise.  Yet, **Defendant argues** that placing Mr. Azim in new removal proceedings after his return to the United States would be fair because "the IJ's grant of a waiver, which is the subject of an appeal by the ICE, would remain intact pending the BIA's resolution of ICE's appeal . . . [and] [i]f the BIA upheld the grant of [] waiver, plaintiff's 1997 misrepresentation would be waived. . . ." **Defendant Response at 13.**

Defendant's argument is simply unsupportable and disingenuous for various reasons.  First, Defendant's argument is simply illogical.  According to the Defendant, if the old waiver is still intact then Mr. Azim would  no longer be deemed inadmissible based on the previous waiver under Section 237(a)(1)(H).  *However*, if this is the case, then there is no need at all for new removal proceedings in the first place.  In any event, the plain language of Section 237(a)(1)(H) explicitly provides that waiver under that this provision also "waive[s] removal based on the grounds of inadmissibility directly resulting from such fraud of misrepresentation."  Therefore, even if Mr. Azim departs the U.S. now and seeks admission into the U.S., he cannot be deemed an arriving alien, but instead must be admitted as a returning LPR based on the waiver.

In addition, Defendant's argument is simply incorrect because it completely ignores the fact that if Mr. Azim is treated as an "arriving alien" upon his return he would be placed in removal

proceedings as an "arriving alien" and *not* as an LPR (his current status). As such, based on the Defendant's construction of Section 1101(a)(13)(C)(iv), the Section 237(a)(1)(H) waiver Mr. Azim received would be null and void, which only applies to aliens deemed to be *within* the United States. *See* INA § 237(a)(1)(H). Based on the Defendant's position, the prior waiver which the IJ granted would *not* be available to "arriving aliens," because they are not deemed to be within the United States. *See id.* ("The provisions of this paragraph [relate] to the removal of aliens *within* the United States.") (emphasis added). If Mr. Azim is deemed an arriving alien, he would need a separate waiver of inadmissibility for material misrepresentation under INA § 212(i), concerning admission of an *immigrant* who is inadmissible for fraud or willful misrepresentation of material fact. Therefore, by deeming **Mr. Azim as an arriving alien,** his Section 237(a)(1)(H) waiver which cures his inadmissibility directly resulting from material misrepresentation would become null and void. This absurd result could not have been contemplated by Congress.

Finally, Defendant fails to explain how deeming Mr. Azim as an arriving alien does not defeat the purpose of the overall statutory scheme which intended to place returning LPRs in the same position and status before leaving the U.S. Defendant does not deny, nor can it deny, that Mr. Azim retains his LPR status during the pendency of the BIA appeal. In addition, Defendant does not deny,[1] nor can it deny, that Mr. Azim does not lose his LPR status by merely departing the U.S under his circumstances. Nonetheless, Defendant argues that Mr. Azim should be treated as an arriving

---

[1] In its Motion to Dismiss, Defendant argued that Mr. Azim would lose his LPR status if he departs the U.S. because he would abandon his cross-appeal of the portion of the IJ's order finding that he made a material misrepresentation upon his entry into the U.S. However, Defendant now claims that it does not rely on 8 C.F.R. § 1003.41. Defendant's sudden change in position regarding this issue is disingenuous. In any event, while 8 C.F.R. § 1003.41 is relevant in this case to determine whether Mr. Azim should be deemed an arriving alien, he is not affected by that provision. In other words, Mr. Azim would not lose his LPR status merely by departing the U.S. during the pendency of the BIA appeal, because he is not subject to any order of removal.

alien upon his return from a trip abroad.   Based on Defendant's position, because of the mere fact

that he departed the U.S. during the pendency of the BIA appeal, Mr. Azim would be deemed an

arriving alien, although (1) such departure in any way affects his LPR status, (2) the Service issued

him a reentry permit, and (3) Mr. Azim has a valid waiver of inadmissibility.   Common sense

dictates that such an absurd result could not have been intended by Congress when it amended 8

U.S.C. § 1101(a)(13)(C).   Nor has Defendant provided any evidence that such intent was

contemplated by Congress.

### 3.   *Tineo v. Ashcroft*, **350 F.3d 382 (3d Cir. 2003)**

Defendant relies on *Tineo v. Ashcroft*, 350 F.3d 382 (3d Cir. 2003) to argue that Plaintiff

should be deemed as an arriving alien under § 101(a)(13)(C)(iv) upon his trip aborad.   At the outset,

the Court notes that *Tineo* is not a binding precedent because it is neither the Supreme Court nor the

Eleventh Circuit precedent.   More importantly, *Tineo* is neither applicable in the instant case nor

persuasive for the following reasons.

First, contrary to the Defendant's claim, *Tineo* does not control the instant case because the

two cases involve materially different legal issues and factual background.   Unlike *Tineo*, this case

raises a significant constitutional issue of whether Defendant may infringe a returning LPR's

constitutional right to international travel by misinterpreting and misapplying statutes and regulations

contrary to its own regulations and legislative intent, even when it allows the Plaintiff to depart and

return to the U.S. in the same status by issuing him a reentry permit.   Unlike the instant Plaintiff, the

petitioner in *Tineo* only challenged the constitutionality of his detention during his removal

proceeding. *Id.* at 397.   However, that issue had been resolved by the Supreme Court in *Demore v.

Kim*, 538 U.S. 510 (2003), which held that mandatory detention of LPRs during removal proceedings

is constitutional. To the contrary, to date, the statutory and constitutional issues raised in the instant case have not been addressed by any court.

Second, unlike the instant case, *Tineo* involved subsection (v) of § 1101(a)(13)(C), a subsection regarding returning LPRs who are inadmissible by virtue of their criminal convictions. Subsection (v) is materially different from the subsection (iv) involved here because criminal aliens like the petitioner in *Tineo* are inadmissible in their own right at the port of entry regardless of whether they have a reentry permit. Unlike the Plaintiff in the instant case, the petitioner in *Tineo* did not have any pending removal proceeding in which he was granted a waiver of inadmissibility upon his return from a trip abroad, nor did he have a reentry permit like the instant Plaintiff. *See Tineo*, 350 F.3d at 388. By contrast, the instant Plaintiff is not inadmissible in his own right because he has a reentry permit, has a waiver of inadmissibility and is not otherwise inadmissible. Thus, *Tineo* does not control the instant case.

Third, to the extent the court in *Tineo* held that an LPR who falls under one of the six subsections in § 1101(a)(13)(C) "is stripped of his lawful permanent residence," that holding is unsupportable because it contradicts the statutes and regulations which affirmatively establish that lawful permanent residence cannot be extinguished until a final order of removal is issued against the LPR. *See id.* at 382; 8 U.S.C. § 1101(a)(20) (defining "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed"); 8 C.F.R. § 1.1(p) ("Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal.").

Nonetheless, Defendant has relied on *Tineo* to argue that a reentry permit is irrelevant in this

14

case because the instant Plaintiff would lose his LPR status if he departs the United States while his removal proceeding is pending.  That argument is unsupportable because it directly contradicts the purpose of such permit to allow a returning LPR to be placed in the same status, "admitted LPR," as before he departed the U.S. for a trip abroad.  *See* 8 U.S.C. § 1203 (providing that one of the criteria in determining whether to issue a reentry permit to an LPR already admitted in the United States is whether the LPR "desires to visit abroad and return to the United States to resume the status existing at the time of his departure for such visit"); 8 CFR §223.2(f) ("Issuance of a reentry permit or refugee travel document to a person in exclusion or deportation proceedings *shall not affect those proceedings*.") (emphasis added).

Defendant's reliance on *Tineo* is unsupportable because, federal case law clearly establishes that only an LPR who is subject to an IJ's removal order loses his status by abandoning his appeal to the BIA, thereby "self-executing" his final order of removal.  *See Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 839 **(9th Cir. 2003)** ("8 C.F.R. § 1003.4 deems an appeal withdrawn only when the alien leaves the country **having already** been ordered deported.  Voluntarily *leaving the country under an order of deportation* amounts to self-deportation because it executes the order.") (emphasis added); *Mejia-Ruiz v. I.N.S.*, 51 F.3d 358, 364 (2d Cir. 1995) (same); *Aleman-Fiero v. Immigration and Naturalization Service*, 481 F.2d 601 (5th Cir. 1973) (per curiam) (an LPR who voluntarily departed the U.S. while *his appeal of the IJ's deportation order* to the BIA was pending no longer had LPR status because he abandoned his appeal which effectively terminated his status under former 8 C.F.R. § 3.4) (emphasis added); *Matter of Luis-Rodriguez*, 22 I. & N. Dec. 747 (BIA 1999) (same). Because the IJ in this case has not issued a removal order against the Plaintiff, *Tineo* simply does not apply here.

15

Notwithstanding the fact that *Tineo* does not apply in the instant case for various reasons, this Court will also not apply *Tineo* in the instant case because *Tineo* was wrongly decided.  First, the *Tineo* court's decision was substantially based on undue reliance on replacement of statutory terms regarding admission of returning LPRs which directly contradicts the statutory language.  The court in *Tineo* held that, in amending § 1101(a)(13)(C), Congress's intent to overturn the *Fleuti* doctrine was "implied" by the following facts: (1) that the amendment replaced the term "entry" with "admission" and "admitted"; (2) that the phrase "not intended" was eliminated; and (3) "the innocent, casual, and brief departure doctrine" was not included.  *See Tineo*, 350 F.3d at 386, 393.  At the outset, the court's holding was erroneous because it placed undue weight on the fact that the amendment replaced the term "entry" with "admission" and "admitted."  Contrary to the court's finding, replacement of these terms did not have any meaningful change in the law.  In fact, Congress explicitly retained the concept of entry in the new law.  Section 1101(13)(A) of the amended statute explicitly provides that: "The terms "admission" and "admitted" *mean*, with respect to an alien, the lawful *entry of the alien into the United States* after inspection and authorization by an immigration officer."  (emphasis added).

In addition, the court's construction of the phrase - "shall not . . . unless" - in Section 1101(13)(C) of the statute is seriously misplaced.  In essence, the court construed this phrase to mean that "other factors" can be considered to make exceptions for returning LPRs not to fall under the six subsections in the statute.  The court only provides one example: subsection (v) which allows returning LPRs to be deemed admitted if they had been granted cancellation of removal despite their criminal convictions.  The court, however, does not provide, nor can it provide, how other factors may be considered in making exceptions to the remaining subsections, because the statutory

16

language simply does not contain the limiting language in subsection (v). The court's construction of the permissive phrase "shall . . . unless" is seriously misplaced and, thus, should not be followed. Therefore, this Court declines to follow *Tineo* in the instant case.

### 4.    8 C.F.R. § 1003.4

Defendant argues that Plaintiff would be deemed an arriving alien under 8 C.F.R. § 1003.4 because he would have self-terminated his LPR status upon his return from a trip abroad by abandoning his cross-appeal in the BIA. 8 C.F.R. § 1003.4 is the federal regulatory provision concerning the BIA's appellate rule. This provision provides for withdrawal of an appeal before the Board when an alien subject to deportation or removal proceedings departs the country prior to the rendering of a decision on appeal. *See* 8 C.F.R. § 1003.4. In the words of the pertinent regulation:

> **Departure from the United States of** a person who is the subject of deportation **proceedings subsequent to the taking** of an appeal, but prior to a decision thereon, shall constitute a <u>withdrawal of the appeal</u>, and the initial decision in the case shall be final to the same extent as though no appeal had been taken. Departure from the United States of a person who is the subject of deportation or removal proceedings, except for arriving aliens as defined in § 1001.1(q) of this chapter, subsequent to the taking of an appeal, but prior to a decision thereon, <u>shall constitute a withdrawal of the appeal</u>, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

*Id.* (emphasis added). Defendant's argument is without merit because it is not mere departure during the pendency of BIA appeal, but the nature of the appeal and departure, that terminates a returning LPR's status. Federal case law undisputably establishes that only an LPR who is subject to an IJ's removal order loses his status by abandoning his appeal to the BIA, thereby "self-executing" his final order of removal. *See Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 839 (9th Cir. 2003) ("8 C.F.R. § 1003.4 deems an appeal withdrawn only when the alien leaves the country having already been ordered deported. Voluntarily *leaving the country under an order of deportation* amounts to self-

deportation because it executes the order.") (emphasis added); *Mejia-Ruiz v. I.N.S.*, 51 F.3d 358, 364 (2d Cir. 1995) (same); *Aleman-Fiero v. Immigration and Naturalization Service*, 481 F.2d 601 (5th Cir. 1973) (per curiam) (an LPR who voluntarily departed the U.S. while *his appeal of the IJ's deportation order* to the BIA was pending no longer had LPR status because he abandoned his appeal which effectively terminated his status under former 8 C.F.R. § 3.4) (emphasis added); *Matter of Luis-Rodriguez*, 22 I. & N. Dec. 747 (BIA 1999) (same). Mr. Azim, however, is not self deporting himself because he won his case before the IJ and, as such, is not subject to any order of removal. Therefore, there can be no dispute that Mr. Azim's brief trip abroad has no effect on his status as an LPR and, thus, Defendant is required to admit him as an LPR upon his return.

**B.      Defendant's Erroneous Construction of the Controlling Statutes and Regulations to Deem the Plaintiff As An Arriving Alien Violates His Constitutionally Protected Right to International Travel**

Defendant's construction of § 101(a)(13)(C)(iv) is also at odds with federal Constitutional authority and case law which additionally allow an alien the right to travel without penalty *unless and until* his or her status as a lawful permanent resident is extinguished judicially. *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963) (an "innocent, casual, and brief" excursion by a resident alien outside the borders of the United States does not disrupt his resident alien status); *Haig v. Agee*, 453 U.S. 280, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (right to travel abroad protected by due process clause of the Fifth Amendment); *Worthy v. U.S.*, 328 F.2d 386 (5th Cir. 1964) (right to travel outside United States is right which is within protection of Constitution); *Matter of Luis-Rodriguez*, 22 I. & N. Dec. 747 (BIA 1999) (departure of an alien subject to deportation proceedings during the pendency of the Service' appeal does not constitute a constructive withdrawal of the Service's appeal).

18

1.   **Plaintiff Has A Constitutionally Protected Right to International Travel**

The right to travel abroad is part of the liberty interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. *Kent* v. *Dulles*, 357 U.S. 117, 125, 78 S. Ct. 1113, 1118 (1958); *Aptheker* v. *Secretary of State*, 378 U.S. 500, 84 S. Ct. 1659 (1964). As a lawful permanent resident ("LPR"), Mr. Azim has this constitutionally protected liberty interest, because an LPR is a "person" whose liberty interests are protected under the United States Constitution. *Zadvydas* v. *Davis*, 533 U.S. 678, 693-94, 121 S. Ct. 2491, 2500-01 (2001); *Kwong Hai Chew v. Colding*, 344 U.S. at 596, 73 S.Ct. at 477, 479 (1953). The mere fact that Mr. Azim would be returning from a trip abroad does not necessarily lessen the level of this constitutional protection because the United States Supreme Court has historically and repeatedly recognized that, as a constitutional matter, LPRs, including returning LPRs, are treated quite differently than other "arriving aliens" to the United States. *Landon* v. *Plasencia*, 459 U.S. 21, 33-34, 105 S.Ct. 321, 329-30 (1982); *Rosenberg v. Fleuti*, 374 U.S. 449, 460, 83 S.Ct. 1804, 1811 (1963); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 73 S.Ct. 472, 477 (1953).

Yet, Defendant argues that Mr. Azim does not have any constitutionally protected right to international travel. However, this argument is simply unsupportable. It is true that restrictions on international travel with an "incidental effect on [this] protected liberty" are within the bounds of due process. *Califano* v. *Aznavorian*, 439 U.S. 170, 177, 99 S. Ct. 471, 475 (1978). However, it is also clear that legislation that amounts to a prohibition on international travel abridges the liberty protected by the Fifth Amendment. *Aptheker*, 378 U.S. at 505-06, 84 S. Ct. at 1663, 1668. (declaring the statutory provision unconstitutional, because it swept "too broadly and indiscriminately" against the right to travel guaranteed in the Fifth Amendment).

In addition, as Plaintiff correctly points out, Defendant has conceded that Mr. Azim has a constitutional right to travel freely.  In its Motion to Dismiss, Defendant acknowledged that, although it "'can be regulated within the bounds of due process," the right of international travel exists. Mr. Thomas Winkowski, Defendant's agent who would make the final field decision whether to admit Mr. Azim as an admitted, rather than an arriving alien, affirmatively admitted that LPRs such as Mr. Azim has right to freely travel in and out of the United States. *See also Ngwanyia v. Ashcroft*, 302 F.Supp.2d 1076, 1080 (D. Minn. Feb 12, 2004) (lawful permanent residents are afforded many rights, including right to apply for citizenship, to petition to immigrate close family members, and to travel abroad freely).  Thus, this Court holds that Plaintiff has constitutionally protected **liberty interest in international travel**.

> **2.      Defendant's Refusal to Admit Mr. Azim As An LPR Upon His Return From A Trip Abroad Violates His Constitutionally Protected Liberty Interest in International Travel Because the Defendant Has No Legitimate Governmental Interest to Curtail Such Liberty Interest**

As Defendant correctly points out, a person's constitutional right to international travel may be circumscribed when there is a legitimate governmental interest involving national security and foreign policy. *See, e.g., Haig* and *Aptheker supra*.  However, Defendant has failed to articulate any legitimate reason, purpose, or governmental interest that would be served by infringing upon Mr. Azim's right to travel abroad. Defendant concedes that it cannot restrict Mr. Azim's right to travel abroad without having a legitimate reason. Def. Motion to Dismiss at 14. Yet, Defendant's only stated reason is that Congress has, according to Defendant, decided that lawful permanent residents who are in removal proceedings should be deemed applicants for admission (i.e., arriving aliens) when they return. According to Defendant, it is simply the status of being placed in a removal

proceeding that bars Mr. Azim's travel. As discussed previously, however, that argument directly contradicts federal case law which clearly establishes that, it is not mere status of being in removal proceeding, but the effect of an LPR who is subject to IJ's removal order and "self executes" his removal by abandoning his BIA appeal by virtue of departing the U.S. during the pendency of the appeal, that makes the LPR inadmissible.

Moreover, the fact that the restriction on travel is tied solely to the government's decision to appeal Mr. Azim's case – a matter Mr. Azim has no control over – demonstrates the lack of a legitimate government purpose. Restricting someone's travel because the government wishes to appeal its case is not related to a legitimate government purpose, particularly where, as here, the appeal is a "paper appeal" filed in another part of the United States (Falls Church, VA) not requiring Mr. Azim's presence. More importantly, Mr. Azim's departure will not prejudice the Government's interest in appealing the IJ's decision because such departure has no effect on the Government's pending appeal in the BIA. On the other hand, accepting the Government's position will have significant prejudicial effect on the Plaintiff. It is undisputed that, under the Defendant's view of the statutory regime, Mr. Azim upon return would lose the waiver granted to him by the immigration judge, would be subject to detention without the opportunity to go before an immigration judge, would lose his access to the administrative appeals procedure, and would be subject anew to a removal hearing where he has less rights than previously accorded him. Under *Landon, Kwong Hai Chew,* and *Rosenberg,* the Constitution does not permit such a drastic revision in his status as a lawful permanent resident.

In light of the foregoing, Defendant's construal of INA § 101(a)(13)(C)(iv) is arbitrary and capricious, and unconstitutionally infringes on Mr. Azim's right to travel abroad, contrary to the

overall statutory scheme regarding returning LPRs.  In addition, the evidence clearly establishes that, based on such unconstitutional statutory construction, Defendant will place Mr. Azim in another removal proceeding.  Defendant's such conduct would render the IJ's order null and void, and ignores the pending removal proceeding.  In sum, Defendant's impermissible conduct violates the Constitution, controlling statutes, and its own rules and regulations.

For the foregoing reasons, this Court GRANTS the Plaintiff's motion for summary judgment and DENIES the Defendant's motion to dismiss and its motion for summary judgment.  It is also hereby DECLARED, ADJUDGED and ORDERED that, upon Plaintiff's return from any overseas trips not exceeding 180 days continuously, Defendant shall admit Mr. Azim as a returning LPR and is prohibited from placing him in any new removal proceedings.

**DONE AND ORDERED** in chambers at Miami, Florida, this _____ day of _____, 2004.

_____
HON. JOSE E. MARTINEZ
U.S. DISTRICT JUDGE


cc:     Ira J. Kurzban, Esq.
        Dexter A. Lee, AUSA

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Plaintiff's Proposed

Findings of Fact and Conclusions of Law was served via First-Class U.S. Mail on Mr. Dexter Lee,

Assistant United States Attorney, Southern District of Florida, at the James Lawrence King Federal

Court House, 99 N.E. 4th Street, Suite 300, Miami, Florida 33132 on this 3rd day of August, 2004.

KURZBAN KURZBAN WEINGER, & TETZELI, P.A.
2650 SW 27th Avenue, 2nd Floor
Miami, Florida 33133
Telephone: (305) 444-0060
Facsimile: (305) 444-3503
Email: dkim@kkwtlaw.com

By: _____
**DAVID K. S. KIM, ESQ.**
New York Bar No.: 4077772